[No. 50434–2.   En Banc.   October 23, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH ALBERT PACHECO, *Appellant.*

60

*Mestel & Muenster* and *John R. Muenster,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

CALLOW, J.—The defendant, Joseph Pacheco, appeals his conviction of first degree robbery. His appeal is based on a claim of violation of his right to speedy trial and alleged evidentiary and instructional errors at trial.

On January 5, 1983, a complaint was filed in a Snohomish County District Court charging the defendant with the robbery of the owner of a grocery store in Snohomish County, and a warrant for his arrest was issued. Bench warrants for probation violations were subsequently issued in both Snohomish and King Counties.

The defendant was arrested by Seattle police on August 26, 1983. After King County Jail authorities confirmed with the Snohomish County Jail that the two Snohomish County warrants were outstanding, the defendant was booked and held in the King County Jail. No notice was given to the Snohomish County Prosecutor of Pacheco's arrest or incarceration.

On October 13, 1983, Pacheco was arraigned in King County Superior Court on the King County probation violation. Upon learning of the status of the robbery warrant, the Superior Court Judge in King County deferred disposition of the probationary hearing and issued an order transferring the defendant to Snohomish County.

On October 17, 1983, Pacheco appeared in Everett District Court on the robbery charge, and the Snohomish County Prosecutor first learned that Pacheco had been arrested. The next day an information was filed in Snohomish County Superior Court charging him with the first degree robbery of the grocery store owner. On October 20, 1983, he was arraigned in Snohomish County Superior Court.

On October 20, the defendant filed a written objection to the date of arraignment and moved to dismiss the information under CrR 3.3 and 8.3(b). The defendant claimed that the date of arraignment exceeded the time specified in CrR 3.3 and that no trial date could comply with CrR 3.3. The motion to dismiss was denied and trial began on December 6, 1983.

During trial, defense counsel moved that the testimony of one Bruce Thompson be admitted. The Everett police apparently had questioned Thompson about the robbery because Thompson looked like the defendant. Defense counsel wanted to show that another person could match the description of the person who had robbed the grocery store even though Thompson was in a Minnesota jail when the robbery occurred. The trial court refused to allow Thompson to testify or sit in the courtroom during trial.

Also during trial, the owner of the grocery store testified that Daryle Pacheco had been a customer in the store and that the defendant was the person who had robbed him with a knife. A customer also testified that the defendant was armed with a knife. A videotape had been made on an in–store camera at the time of the robbery. It showed that a robbery was taking place and clearly corroborated that the perpetrator of the crime used a knife to threaten the store

owner. There was a clear visual threat to use a deadly weapon. *See State v. Hentz*, 99 Wn.2d 538, 663 P.2d 476 (1983). Also during the trial, a detective testified, over objection, that the Pacheco family lived 12 blocks from the grocery store. When the prosecutor asked the detective whether Daryle Pacheco was the defendant's brother, defense counsel's objection was quickly followed by an affirmative answer. The objection was overruled.

At the conclusion of the testimony, defense counsel requested an instruction on second degree robbery (RCW 9A.56.210) and on unlawful display of a weapon with intent to intimidate (RCW 9.41.270) which were refused. During closing argument the prosecutor argued that the defense had been manufactured because mistaken identity was the only defense available under the evidence. The prosecutor made several negative comments and gestures regarding the defense's proposed testimony that another person looked like the defendant. Defense counsel's objections to these closing arguments were overruled and his motion for mistrial was denied.

The defendant raises on appeal: (1) whether the dates of arraignment and trial provided Pacheco were within the time limits set by CrR 3.3; (2) whether the government's actions were excusable or were misconduct justifying dismissal of the charge pursuant to CrR 8.3(b); (3) whether the trial court erred in not allowing Bruce Thompson to testify and forbidding him from being present in the courtroom; (4) whether the trial court erred by permitting the testimony of the detective; (5) whether the trial court erred in not instructing the jury on the lesser included offenses of robbery in the second degree and unlawful display of a weapon with intent to intimidate; and (6) whether the closing argument by the prosecutor constituted reversible error.

Was the time period between arraignment and trial within the time limits of CrR 3.3?

The following time intervals are determined from the record. Pacheco was detained by King County Jail authori-

ties for 52 days prior to his appearance in Everett District Court. The information was filed 1 day after the Everett District Court appearance. He was arraigned in Superior Court 2 days after the information was filed. Trial began 47 days after arraignment.

CrR 3.3 reads in applicable part as follows:

**(c) Time for Arraignment and Trial.**

(1) *Cases Filed Directly in Superior Court.* If the defendant is detained in jail or subject to conditions of release, the defendant shall be arraigned not later than 14 days after the date the information or indictment is filed directly in superior court. . . .

(2) *Cases Filed Initially in District Court.*

(i) If after proceedings have been initiated in district court an information or indictment is filed with the superior court, and if at the time the information or indictment is filed the defendant is detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 14 days after the date the information or indictment is filed. . . . A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment, less time elapsed in district court. . . .

(ii) "Time elapsed in district court" means the following: . . . If at the time a complaint is filed with the district court the defendant is not detained in jail or subjected to conditions of release, time elapsed in district court commences on the date of the defendant's appearance in district court which next follows the filing of the complaint. Time elapsed in district court ends with the earlier of (a) an oral or written order of dismissal entered by the district court, or (b) the filing of an information or indictment in superior court. . . .

. . .

**(f) Setting of Trial Date—Notice to Parties— Objection to Trial Date—Waiver.**

(1) The court shall, within 15 days of the defendant's actual arraignment in superior court, set a date for trial which is within the time limits prescribed by this rule, and notify counsel for each party of the date set. . . . The notice shall set forth the proper date of the defendant's arraignment as established at the time of arraignment, the date set for trial and the number of days which

will elapse before the trial date. A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits. Failure of a party, for any reason, to make such a motion shall be a waiver of the objection that a trial commenced on such date, or on an extension of such date properly granted pursuant to this rule, is not within the time limits prescribed by this rule.

. . .

**(g) Excluded Periods.** The following periods shall be excluded in computing the time for arraignment and the time for trial:

. . .

(2) Preliminary proceedings and trial on another charge . . .

No violation of the time for arraignment or trial is found applying the time intervals in this case to CrR 3.3. A defendant shall be arraigned not later than 14 days after the date the information is filed in superior court. CrR 3.3(c)(2)(i). Pacheco was arraigned 2 days after the information was filed. Arraignment was timely because it occurred 12 days before the latest date required by CrR 3.3(c). Also, a defendant shall be brought to trial not later than 60 days after the date of arraignment less time spent in district court. CrR 3.3(c)(2)(i). If the defendant is not detained in jail at the time a complaint is filed with the district court, the time elapsed in district court commences on the date of the defendant's appearance in district court, which next follows the filing of the complaint and ends when the information was filed. CrR 3.3(c)(2)(ii). Pacheco was not in jail when the complaint was filed. He was at large. He first appeared in district court on October 17 and the information was filed 1 day later.

Trial was timely because it commenced before the expiration of the time period set forth by CrR 3.3(c). There was no violation of the time for arraignment or trial. Under CrR 3.3 the time spent in King County Jail under the authority of his arrest for probation violations was time during which

he was held for hearing on another charge.

The defendant contends that CrR 3.3 and CrR 4.1(a) do not authorize an exclusion of time between the defendant's arrest and his superior court arraignment citing *State v. Carpenter,* 94 Wn.2d 690, 619 P.2d 697 (1980), *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979), and *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976).

*State v. Carpenter, supra,* and *State v. Striker, supra,* held that the applicable date from which to calculate the 60 and the 90 days within which a defendant must be brought to trial is the date of the filing of an information, and these time periods are to be strictly enforced unless delay is caused by the connivance of the defendant.

▉ *State v. Alexus, supra,* held that where a defendant is in jail awaiting sentencing on another charge and is amenable to process, the State must prove that it acted with good faith and due diligence to bring the defendant to trial after the filing of the information. In *Alexus* there was an inordinate, unjustifiable delay. In the case before us, had the Snohomish County Prosecutor known where the defendant was, he would have found the defendant held for probation revocation. This hold upon the defendant was entitled to deference. The prosecutor finding a defendant held on a parole hold faces a choice as to whether to proceed with prosecution or await the outcome of the parole revocation hearing. A reasonable period should be permitted to make such a choice so long as the prosecutor acts in good faith and with due diligence. Here we find no lack of good faith or diligence. Further, whereas in *State v. Alexus,* the prosecutor knew where the defendant was and did not follow up on the knowledge; here the defendant was lost to the prosecutor during the major portion of the time between the filing of the complaint and the defendant's arraignment. *See also State v. Bledsoe,* 31 Wn. App. 460, 643 P.2d 454 (1982).

*State v. Brown,* 33 Wn. App. 843, 658 P.2d 44 (1983), *State v. Chaney,* 17 Wn. App. 258, 562 P.2d 259 (1977), and *Wilhelm v. Harvey,* 16 Wn. App. 802, 559 P.2d 597 (1977)

hold that when a defendant is held on an unrelated charge, the longer 90–day rather than the 60–day period will apply; that time spent in trial on another charge will be excluded from the speedy trial computation and that when a defendant is held under a parole detainer the rule should be construed to exclude the period during which the defendant is awaiting hearing on the parole hold. We find these cases consistent with our reasoning that CrR 3.3(g)(2) should encompass within "[p]reliminary proceedings and trial on another charge" the period held awaiting hearing on a probation violation. Here the defendant was held in King County Jail pending a probation revocation hearing and therefore the time spent in King County was excludable under CrR 3.3(g)(2) as a time period when he was held awaiting hearing on another charge.

> Whether the governmental actions constituted simple mismanagement, arbitrary action, or misconduct justifying dismissal of the charge pursuant to CrR 8.3(b).

The defendant cites *State v. Dailey*, 93 Wn.2d 454, 610 P.2d 357 (1980) as authority for dismissal. In *Dailey*, the trial court properly dismissed an action because numerous incidents of prosecutorial mismanagement had occurred throughout the proceedings. The prosecution had failed to comply with a court order to provide the defense with laboratory reports and witness lists and, after a continuance had been granted the defendant, the trial court found that the State's witness list had increased. When the prosecution said that it could not try the case using the original witness list, the action was dismissed. The State conceded negligence in handling the case and the dismissal was upheld there being no showing of an abuse of discretion. Here the State has not conceded mismanagement. The record shows that the Snohomish County Prosecutor's office had no knowledge of the defendant's arrest until he was brought before the District Court in Everett. There was no prosecutorial misconduct and therefore no abuse of dis-

cretion when the trial court declined to dismiss under CrR 8.3(b).

The King County Jail authorities cannot be held to have mismanaged the situation, since to their knowledge they held the defendant pursuant to a valid probation revocation hold. The trial judge was not compelled to grant dismissal under CrR 8.3(b).

Whether the trial court erred in excluding the testimony and courtroom presence of Bruce Thompson.

■ The right to compulsory process to obtain witnesses is guaranteed by the United States and Washington State Constitutions, but the testimony must be "relevant and material to the defense." *State v. Smith,* 101 Wn.2d 36, 41, 677 P.2d 100 (1984); *see* U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). The burden of showing relevance and materiality is on the proposer of the testimony. The defendant contends that Thompson's testimony would have laid an evidentiary foundation to argue that Pacheco's appearance was in no way unique and the eyewitness description did not fit Pacheco any more than it fit others. We do not find relevance and materiality to Thompson's proposed testimony.

■ Thompson would have testified that the police had stopped him in connection with the robbery. This would have been particularly irrelevant and immaterial to the issue of misidentification since Thompson was in a Minnesota jail on the day the grocery store owner was robbed. A look alike as a defense witness could only be relevant to a claim of misidentification if the look alike could have committed the crime. *See State v. Kwan,* 174 Wash. 528, 533, 25 P.2d 104 (1933); *State v. Jones,* 26 Wn. App. 551, 555, 614 P.2d 190 (1980). The testimony of Thompson was properly excluded.

■ The right of a public trial likewise is guaranteed. However, the trial judge has the power to control the courtroom consistent with the ends of justice. As stated in *State v. Johnson,* 77 Wn.2d 423, 428, 462 P.2d 933 (1969):

The power to exclude witnesses from the courtroom, we think, falls within the general discretionary powers of the court to be exercised during trial in aid of eliciting the truth, promoting the orderly presentation of evidence, and to assure that all parties, in the exercise of reasonable diligence, are afforded fair opportunity to offer all relevant evidence.

See also *Gatterdam v. Department of Labor & Indus.*, 185 Wash. 628, 56 P.2d 693 (1936). The presence of Thompson in the courtroom would not have assisted the jury but would have caused confusion. The presence of Thompson would have been inconsistent with the ruling prohibiting him from testifying and his presence would have been misleading. It was not an abuse of discretion by the trial court to exclude him from the courtroom.

Whether the trial court erred by permitting the testimony of the detective.

The testimony of the detective was relevant to show proximity and accessibility of the defendant to the scene of the crime. The detective could testify to the relationship of Daryle Pacheco to the defendant if it was within his personal knowledge. The connection between Daryle Pacheco, who was identified as a customer by the store owner, and the defendant was relevant since it tended to make the presence of the defendant at the scene of the crime more probable than without the testimony. Therefore, it was relevant. ER 401. The defendant could have challenged the detective's knowledge on cross examination, but did not do so. He cannot complain now.

Whether the trial court erred in not instructing the jury on the lesser included offenses of robbery in the second degree (RCW 9A.56.210) and unlawful display of a weapon with intent to intimidate another (RCW 9.41.270).

■ A defendant is entitled to an instruction on a lesser included offense if each of the elements of the lesser offense is a necessary element of the offense charged and the evi-

dence supports an inference that the lesser crime was committed. *State v. Parker,* 102 Wn.2d 161, 683 P.2d 189 (1984); *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). As noted in *Parker* and *Workman,* there is a 2-prong test for determining when a lesser included offense instruction must be given. It is:

> First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed.

*Parker,* at 164. It is obvious and unquestionable that the perpetrator of the robbery was armed with a knife. RCW 9A.56.190 reads in part:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person . . . Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.200 reads:

> Robbery in the first degree. (1) A person is guilty of robbery in the first degree if in the commission of a robbery . . . he:
> (a) Is armed with a deadly weapon; or
> (b) Displays what appears to be a firearm or other deadly weapon . . .

RCW 9A.56.210 reads in part:

> Robbery in the second degree. (1) A person is guilty of robbery in the second degree if he commits robbery.

RCW 9.41.270 states in part:

> (1) It shall be unlawful for anyone to carry, exhibit, display, or draw any . . . knife . . . in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

The defendant is entitled to a lesser included offense instruction if each element of the lesser offense is a neces-

sary element of the offense charged when the evidence in the case supports a reasonable inference that the lesser crime was committed. Each element of second degree robbery is a necessary element of first degree robbery. To convict of first degree robbery, the State must prove every element of second degree robbery and in addition thereto that the defendant was armed with a deadly weapon or displayed what appeared to be a deadly weapon. *See* Washington Pattern Instructions, Criminal, 37.01, 37.02 and 37.03.

In order for an instruction to be given there must be evidence to support that instruction, or, as in the case of a request for an instruction on a lesser included offense, the evidence must support an inference that the lesser crime was committed. Here, as forcefully argued by the defendant in his brief, the only question was one of identification, not whether robbery in the first degree was committed. The evidence supports an instruction on robbery in the first degree or nothing; it does not support an instruction on robbery in the second degree there being no question about the presence and use of a knife. Further, in regard to the assertion that an instruction should have been given on the unlawful display of a weapon with intent to intimidate, it is clear that being armed with or displaying a deadly weapon is an essential element (under the evidence of this case) of robbery in the first degree. The evidence is uncontested by the defendant that whoever was present in the grocery store carrying a knife, took an estimated $200 from the grocery store owner by virtue of the threat of the knife. Under the 2–pronged test of *Parker* and *Workman,* only one crime could be instructed upon, robbery in the first degree, and no other.

Whether the closing argument by the prosecutor constituted reversible error.

Reversible error occurs "[w]hen the appellate court is unable to say from the record before it whether the defendant would or would not have been convicted but for

the error committed in the trial court, then the error may not be deemed harmless, and the defendant's right to a fair trial requires that the verdict be set aside and that he be granted a new trial." *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968), *cert. denied,* 393 U.S. 1081 (1969).

> The responsibility of the prosecutor in the matter of a fair trial is referred to in *People v. Fielding* (1899), 158 N. Y. 542, 547, 53 N. E. 497, 46 L. R. A. 641, in these words:
> "Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a *quasi*–judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sympathy or resentment."

*State v. Reed,* 102 Wn.2d 140, 146–47, 684 P.2d 699 (1984).

■ A defendant is denied a fair trial if "there was a 'substantial likelihood' that the comments affected the jury". *Reed,* at 145. The defendant states that the prosecutor argued that the defense had manufactured a defense and tried to "point the finger elsewhere". This argument is in answer to the defendant's assertion that someone else had committed the crime. The prosecutor also commented about the reliability of the grocery store manager. Such comments were fair argument. The defendant asserts that it was unfair of the prosecutor to point his finger at him. However, the defendant was identified independently. The defendant's objections to the other statements of the prosecutor about the evidence presented, we find to have been fair comment and nonprejudicial.

The conviction is affirmed.

DOLLIVER, C.J., and DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J. (concurring)—While I concur with the result, I am concerned about the failure to recognize a serious issue which the majority does not treat adequately.

The speedy trial question and a claimed violation of CrR 8.3 are intertwined. Snohomish County law enforcement authorities knew for almost 2 months the precise location of the defendant. Yet no arraignment or any other Snohomish County proceedings were undertaken. The majority apparently holds that the knowledge of its law enforcement officials cannot be imputed to the State. The majority focuses solely upon the knowledge of the prosecutor. No analysis or authority is cited for the proposition that the actual knowledge of law enforcement authorities is not of relevance in determining this issue. This record contains neither sufficient facts nor briefing on what could be a pivotal issue, therefore I would affirm; the majority seems to foreclose the issue. The question should remain subject to further scrutiny in an appropriate case.

UTTER, J., concurs with BRACHTENBACH, J.