32 P.3d 996 (2001)
STATE of Washington, Petitioner,
v.
Chad T. HUFFMEYER, Respondent.
No. 70194-6.
Supreme Court of Washington, En Banc.
Argued January 9, 2001.
Decided October 18, 2001.
Kitsap County Pros. Atty., Randall Sutton, Fort Orchard, for Petitioner.
Melissa A. Hemstreet, Port Orchard, for Respondent.
*997 Pamela B. Loginsky, Wash. Ass'n of Pros. Atty., Olympia, amicus curiae on behalf of Washington Ass'n of Prosecuting Attorney.
BRIDGE, J.
The trial court dismissed criminal charges against Chad T. Huffmeyer because the State had failed to bring him to trial within 104 days of the information as required by CrR 3.3(c)(1) and State v. Striker, 87 Wash.2d 870, 557 P.2d 847 (1976). We are asked to determine whether CrR 3.3(g)(2)'s exclusion from speedy trial calculation of the period during trial on another matter includes the period between a guilty plea and sentencing. We hold that it does not. We are also asked to determine whether the State exercised good faith and due diligence in attempting to promptly bring Huffmeyer before the court. We hold that the State did not.

FACTS
On September 17, 1997 the State filed an information in King County charging Huffmeyer with one count of first degree robbery. The King County Superior Court issued a warrant and upon completion of a two-month sentence in Whatcom County, Huffmeyer was transported to King County. On November 5, 1997, the King County Superior Court arraigned Huffmeyer on the King County charges and, for the duration of that case, he was held in the King County jail.
On December 5, 1997, the State filed an information in the action at issue in Kitsap County, charging Huffmeyer with possession of a stolen firearm. On that day, the Kitsap County Superior Court issued a warrant for Huffmeyer's arrest. The warrant was returned to the court on December 8 with a notation that Huffmeyer was in custody in the King County jail. The State did not take any additional steps to bring Huffmeyer to trial in Kitsap County at that time.
In the King County action, Huffmeyer pleaded guilty to an amended information charging one count of second degree robbery on April 27, 1998. On August 14, 1998, the King County court sentenced Huffmeyer to 12 months in the King County jail with credit for time served. At the conclusion of his sentencing, Huffmeyer was transported to Kitsap County on the warrant issued there.
On August 26, 1998, 121 days after the King County guilty plea, Huffmeyer was arraigned in the Kitsap County action. The trial court granted Huffmeyer's motion to dismiss the charges with prejudice on speedy trial grounds because he had not been brought before the court within the 104-day speedy trial limit under CrR 3.3(c)(1) and Striker, 87 Wash.2d 870, 557 P.2d 847. The court also found that the State had not acted with good faith and due diligence to bring Huffmeyer to trial because although the return of the warrant had informed the State of Huffmeyer's location, no timely action had been taken to bring him to trial in Kitsap County.
The Court of Appeals affirmed the trial court's dismissal of the Kitsap County charge. State v. Huffmeyer, 102 Wash.App. 121, 5 P.3d 1289 (2000). The court first determined, by remanding the question to the trial court, that the earliest Huffmeyer would have learned of the Kitsap County charges against him would have been on August 17, 1998, just before he was transported to Kitsap County. Huffmeyer, 102 Wash.App. at 123, 5 P.3d 1289. The Court of Appeals concluded that the exclusionary period under CrR 3.3(g)(2) ended when the guilty plea was entered. Id. at 125, 5 P.3d 1289. In addition, since Huffmeyer had not been promptly notified of the Kitsap County charges, by doing nothing to bring Huffmeyer to trial during the 121-day delay between the King County guilty plea and sentencing, the Kitsap County prosecutor had not shown good faith and due diligence as required by this court's holding in Striker. Id.; Striker, 87 Wash.2d at 870, 557 P.2d 847. The Court of Appeals affirmed the trial court's dismissal of the charge against Huffmeyer on speedy trial grounds.

ANALYSIS
Washington's CrR 3.3(c) governs the time for arraignment and trial to ensure that criminal defendants are granted a speedy trial. If a defendant is detained in jail or *998 subject to conditions of release, he or she must be arraigned within 14 days after the date that the indictment or information is filed in superior court. CrR 3.3(c)(1). If the defendant is not released from jail pending trial, he or she must be brought to trial no later than 60 days after arraignment. Id. If the defendant is not detained in jail or subject to conditions for release, then the defendant must be arraigned no later than 14 days after the first appearance in superior court following the filing of the information or indictment. Id. If the defendant remains free from jail, he or she must be brought to trial within 90 days of arraignment. Id. When a person is being held in custody in another county on an unrelated charge, he or she is not "detained in jail on the current charge" for the purposes of CrR 3.3(c)(1). Huffmeyer, 102 Wash.App. at 123, 5 P.3d 1289 (citing State v. Thompson, 57 Wash.App. 688, 690, 790 P.2d 180 (1990), aff'd sub nom. State v. Greenwood, 120 Wash.2d 585, 845 P.2d 971 (1993)); see also State v. Pacheco, 107 Wash.2d 59, 65-66, 726 P.2d 981 (1986). Therefore, the 90-day period between arraignment and trial applies in Huffmeyer's Kitsap County case.
CrR 3.3 does not address any time requirements for initially bringing defendants who are not detained on the current charge before the court. Greenwood, 120 Wash.2d at 589, 845 P.2d 971. In Striker, this court filled that gap. Striker, 87 Wash.2d at 877, 557 P.2d 847. The prosecutor in Striker filed informations charging both defendants with grand larceny and securities fraud, but the defendants were not promptly arraigned. Id. at 871, 557 P.2d 847. The trial court rejected the defendants' motions to dismiss under the belief that the only applicable date for calculating time for trial was the date of first appearance before the court. Id. This court disagreed, stating that the intent and spirit of the criminal rules required that if the defendant was amenable to process, he or she must be brought to trial "within the time specified in CrR 3.3, after the information or indictment is filed." Id. at 877, 557 P.2d 847. If a long period of delay has occurred between filing and bringing the defendant to court, "through no fault or connivance of the defendant," the gap in CrR 3.3 must be filled by the court. Id. at 872, 557 P.2d 847.
In Greenwood, this court clarified the Striker rule:
[W]here a long and unnecessary delay occurs in bringing a defendant who is amenable to process before the court, CrR 3.3's 90-day trial period is deemed to commence at the time the information was filed, instead of when the defendant finally appeared before the court to answer for the charge.
Greenwood, 120 Wash.2d at 591, 845 P.2d 971 (emphasis added). Striker thus established a constructive arraignment date 14 days after the information was filed where unnecessary delays have occurred. Id. at 599, 845 P.2d 971. The defendant must be brought to trial 90 days after this constructive arraignment date, or a total of 104 days after the date the information was filed. Id.
However, the Greenwood court also noted that Striker should not impose an undue burden on law enforcement. Id. at 601, 845 P.2d 971. Only unnecessary delay triggers the Striker rule. Id. The Greenwood court held that the Striker rule does not require the court to establish a constructive arraignment date in cases where the state acted with good faith and due diligence in attempting to bring the defendant before the court. Id. Whether the state acted with good faith or due diligence necessarily turns on the facts of each case. Id.
In calculating whether the number of days between the information and trial falls within the 104-day limit, the trial court must also consider whether any days are excluded under CrR 3.3(g). Specifically, CrR 3.3(g)(2) deducts from speedy trial calculation "[p]reliminary proceedings and trial on another charge." CrR 3.3(g)(2). However, this court has never directly addressed whether the term "trial," as used in this exclusionary rule, includes the time between a guilty plea and sentencing.[1]
*999 Therefore, we must decide here whether the 121-day period between Huffmeyer's guilty plea and his sentencing is excluded from the speedy trial calculation under CrR 3.3(g)(2). If the 121 days are not excluded, we must determine whether the Kitsap County prosecutor acted with good faith and due diligence in attempting to bring Huffmeyer before the court.

I
Two hundred and sixty-four days elapsed from the filing of the Kitsap County information to the Kitsap County arraignment. Those days that occurred before Huffmeyer's King County guilty plea are excluded from speedy trial calculation of the Kitsap County action under CrR 3.3(g)(2). However, 121 days remained during almost all of which Huffmeyer awaited sentencing in King County. If the time between the guilty plea and sentencing is not excluded from the speedy trial calculation, then the 121-day time between the guilty plea and the arraignment in Kitsap County extends beyond CrR 3.3's 104-day speedy trial limit.[2]
The State relies on State v. Pizzuto, 55 Wash.App. 421, 778 P.2d 42 (1989), to support its proposition that the term "trial" in CrR 3.3(g)(2) includes the time between a guilty plea and sentencing.[3] In Pizzuto, the defendant was apprehended in Montana and was held on arrest warrants from both Washington and Idaho. Id. at 423, 778 P.2d 42. Washington agreed to subordinate its extradition request to Idaho's but placed a hold on Pizzuto that would be activated if the defendant were released from custody or found not guilty. Id. at 424-25, 778 P.2d 42. Pizzuto was sentenced to death in Idaho. Id. at 425, 778 P.2d 42. After sentencing, Washington officials inquired as to when Pizzuto would be available for trial in Washington. Id. Idaho officials replied that his presence was required there until posttrial motions were heard. Id. Washington kept in continued communication with Idaho officials until Pizzuto was transferred to King County to face charges for crimes that occurred in Washington. Id.
Pizzuto claimed that the state breached the speedy trial requirements by agreeing to allow Idaho to proceed with its trial and by failing to bring him before a Washington court within speedy trial limits. Id. The state responded that the delay was justified under CrR 3.3(g)(2). Id. at 425-26, 778 P.2d 42. Noting that no contrary authority existed, Division One of the Court of Appeals interpreted "trial" as used in CrR 3.3(g)(2) to "encompass sentencing and posttrial motions regardless of the order in which they occur." Id. at 427, 778 P.2d 42.
The Pizzuto court gave several reasons for interpreting the term "trial" to include sentencing and posttrial motions. First, this interpretation would allow one jurisdiction to complete its prosecution before another jurisdiction is required to begin, assuring that the defendant can be physically present for both criminal proceedings. Id. This interpretation would also allow the second jurisdiction to await the results of the first trial and motions before deciding how to proceed. Id. Moreover, the Pizzuto court recognized that an interpretation of the rule that requires a defendant to be available to a second jurisdiction for trial on any day on which he is not physically in the courtroom in the first jurisdiction would prove awkward and would impose an undue burden on the state to transport the defendant between jurisdictions. Id. at 427-28, 778 P.2d 42. In Pizzuto's case, transporting the defendant to King County to be arraigned during his sentencing in Idaho would have triggered Washington's 60-day speedy trial rule and could have prejudiced the defendant's ability to defend himself in both proceedings. Id. at 428, 778 P.2d 42.
Although it managed to distinguish both cases, the Pizzuto court admitted that the holdings of State v. Alexus, 91 Wash.2d 492, *1000 496, 588 P.2d 1171 (1979) and Pacheco, 107 Wash.2d at 65, 726 P.2d 981, could "create uncertainty" as to the validity of this interpretation of CrR 3.3(g)(2). Pizzuto, 55 Wash.App. at 428, 778 P.2d 42. The Pacheco court followed the Alexus court's holding that "where a defendant is in jail awaiting sentencing on another charge and is amenable to process, the State must prove that it acted with good faith and due diligence to bring the defendant to trial after the filing of the information." Pacheco, 107 Wash.2d at 65, 726 P.2d 981 (emphasis added) (citing Alexus, 91 Wash.2d at 496, 588 P.2d 1171). The Pizzuto court distinguished Alexus by reasoning that the Alexus court did not specifically discuss the applicability of the CrR 3.3(g)(2) exclusion or the definition of the term "trial"; instead it considered the "unavailability" of defendant under former CrR 3.3(f). Pizzuto, 55 Wash.App. at 428, 778 P.2d 42. Consequently, the Pizzuto court reasoned that neither Alexus nor Pacheco precluded its interpretation of the term "trial" in CrR 3.3(g)(2). Id. at 428-29, 778 P.2d 42. The Pizzuto court concluded that the entire period during which the Idaho proceedings were conducted, including the time for posttrial motions and sentencing, was excluded from calculation of the Washington speedy trial period. Id. at 430, 778 P.2d 42.
We disagree with the Pizzuto court's interpretation of CrR 3.3(g)(2) and instead follow the Alexus court in holding that where a defendant is in jail awaiting sentencing on one charge, the state must act with good faith and due diligence to bring the defendant before the court on additional unrelated charges. We therefore interpret CrR 3.3(g)(2)'s exclusion of "[p]reliminary proceedings and trial" to end upon a guilty plea.
Huffmeyer is correct in his assertion that the language and structure of the criminal rules themselves distinguish "sentencing" from "trial." For example, CrR 4 addresses "Procedures Prior to Trial," CrR 6 addresses "Procedures at Trial," and CrR 7 addresses "Procedures Following Conviction," which includes rule 7.2 entitled "Sentencing." Therefore, it is evident from the structure of the rules that they contemplate a distinction among pretrial, trial, and sentencing procedures. According to this scheme, sentencing is not included in the definition of "trial." In addition, the language of CrR 3.4(a) recognizes this distinction. The rule reads:
The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.
CrR 3.4(a). By not including sentencing as an element within the term "trial," the language of this rule supports the conclusion that the criminal rules contemplate that trial ends with the guilty plea or conviction.
The Pizzuto court raised concerns that such a limited interpretation of the CrR 3.3(g)(2) exclusion might unduly burden the state to transport defendants between jurisdictions. Pizzuto, 55 Wash.App. at 427-28, 778 P.2d 42. However, the result of our interpretation is not an absolute requirement that a defendant awaiting sentencing be available for transport on every day that he or she is not in court for posttrial proceedings. The state can also exclude days from the speedy trial calculation by showing that it acted with good faith and due diligence in attempting to bring the defendant before the court.
Therefore, we hold that the term "trial" as used in CrR 3.3(g)(2) ends when the defendant enters a guilty plea. The time between Huffmeyer's plea and his sentencing cannot be excluded under this exception and the 121-day delay between the filing of the information and the arraignment cannot be reduced. We must now consider whether any days can be excluded under Striker where the state acted with good faith and due diligence to bring the defendant before the court.

II
Because the delay in bringing Huffmeyer before the court after his guilty plea exceeded the 104-day limit under Striker, we must determine if that delay can be excused because it was necessary or because the *1001 State acted with good faith and due diligence to bring the defendant, who was amenable to process,[4] before the court. See Greenwood, 120 Wash.2d at 591, 845 P.2d 971. This good faith and due diligence standard ensures that a defendant will be brought before the court in a timely manner to answer a charge, while also acknowledging that some periods of delay may be unavoidable. Without such an exception, there would be an unacceptable burden on law enforcement, which could often lead to unjustified dismissals. Id. at 601, 845 P.2d 971.
By its own terms, due diligence requires the expenditure of at least a minimal amount of effort to bring a defendant before the court in a timely manner. This court has held that the state failed to exercise good faith and due diligence where it made "absolutely no effort" to locate the defendant during the six months immediately following the filing of the information. Alexus, 91 Wash.2d at 496, 588 P.2d 1171. Similarly, in State v. Peterson, 90 Wash.2d 423, 425, 585 P.2d 66 (1978), the defendant pleaded guilty to a federal charge and was confined in a federal penitentiary for a full year before any action was taken on charges filed against him in Snohomish County. During that year, the state made no effort to locate or determine the availability of the defendant. Id. at 426, 585 P.2d 66. However, the Peterson court noted that, in determining whether the state acted reasonably, the time necessary for transporting the defendant and delays caused by the alternate jurisdiction are important factors to be considered. Id. at 428, 585 P.2d 66 (quoting State v. Hattori, 19 Wash.App. 74, 78-79, 573 P.2d 829 (1978)).
Washington courts have consistently held that due diligence requires that the state do something to locate the defendant and bring him or her to trial once proceedings in alternate jurisdictions are complete. Similarly, where a defendant is being held on charges in another county, due diligence requires the state to make efforts to bring the defendant to trial once the exclusions of CrR 3.3 no longer apply. In Huffmeyer's case, when informed of his location, prosecutors should have at least inquired as to when he would be available for trial in Kitsap County. Further, prosecutors should have contacted King County to inquire as to the progression of Huffmeyer's trial and his availability after the guilty plea. Instead they allowed him to remain in the King County jail for 121 days before bringing him to trial. This is not to say that speedy sentencing requirements or other concerns could never prevent a defendant's transfer before sentencing is complete. We agree that factors like the time necessary for transport and delay caused by the alternate jurisdiction are relevant. However, due diligence requires the state to do something to ensure that the defendant is brought before the court in a timely manner. We agree with the Court of Appeals that the State has "`failed to put forth any argument that it acted in good faith and with due diligence'" to bring Huffmeyer to court after his guilty plea. Huffmeyer, 102 Wash.App. at 127, 5 P.3d 1289 (quoting Greenwood, 120 Wash.2d at 609, 845 P.2d 971).
Before issuing a decision, the Court of Appeals asked the trial court to determine whether Huffmeyer had any knowledge of the Kitsap County charges while he was awaiting sentencing in King County. The trial court responded that the earliest Huffmeyer could have become aware of the Kitsap County charges against him was August 17, 1998, just before his transfer. The Court of Appeals therefore implied that had the defendant been informed that charges were filed against him in Kitsap County, the due diligence requirement might have been satisfied. We see no need to decide to what extent a defendant might be responsible for demanding his own speedy trial. The Striker court imposed a due diligence requirement on the state. The Kitsap County prosecutor allowed the defendant to remain in the King *1002 County jail for 121 days without even inquiring as to his availability for trial. Therefore, we hold that the Striker due diligence requirement was not satisfied in this case.

CONCLUSION
Washington's CrR 3.3 and the Striker rule combine to require the state to bring a defendant before the court within 104 days of the filing of the information or indictment. Days can be deducted from this speedy trial calculation if one of CrR 3.3(g)'s exclusionary rules applies or if the state acted with good faith and due diligence to bring the defendant before the court. We hold that the term "trial on another charge" in CrR 3.3(g)(2)'s exclusion does not include the period between the guilty plea and sentencing. That period could not be deducted from Huffmeyer's speedy trial calculation. In addition, the State did nothing to bring Huffmeyer before the court in Kitsap County during the 121 days between Huffmeyer's guilty plea and his arraignment in Kitsap County. The State did not exercise due diligence in attempting to bring Huffmeyer before the court. Therefore, we affirm the Court of Appeals' and the trial court's dismissal of the charges against Huffmeyer.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS, JJ., concur.
NOTES
[1] Although the parties in Greenwood agreed that Greenwood's time for trial calculation "began on the day the defendant pleaded guilty to the assault charge," this court has never specifically addressed the issue. Greenwood, 120 Wash.2d at 609, 845 P.2d 971.
[2] The Court of Appeals noted that there was a conflict in case law regarding whether a showing of good faith and due diligence is required before the exclusion in CrR 3.3(g)(2) can be given effect. Huffmeyer, 102 Wash.App. at 125, 5 P.3d 1289. The Court of Appeals found it unnecessary to reach this question because it concluded that CrR 3.3(g)(2)'s exclusionary period ends upon the guilty plea. Id.
[3] Pet. for Review at 9-10.
[4] As the Greenwood court stated it, the Striker rule applies only to defendants who are amenable to process. Greenwood, 120 Wash.2d at 591, 845 P.2d 971 ("[W]here a long and unnecessary delay occurs in bringing a defendant who is amenable to process before the court, CrR 3.3's 90-day trial period is deemed to commence at the time the information was filed...."). "Amenable to process" means being liable or subject to law. State v. Stewart, 130 Wash.2d 351, 361, 922 P.2d 1356 (1996). Because Washington courts have jurisdiction over in-state defendants, a defendant within the state is amenable to process. See State v. Hudson, 79 Wash.App. 193, 196, 900 P.2d 1130 (1995), aff'd, 130 Wash.2d 48, 921 P.2d 538 (1996).