# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Personal Restraint of
SIONE P. LUI,

Petitioner.

No. 72478-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 19, 2016

APPELWICK, J. — Lui filed this personal restraint petition challenging his conviction for murder in the second degree. He seeks a new trial based on ineffective assistance of counsel, violations of his rights of due process and religious freedom, and prosecutorial and juror misconduct. In a supplement to his petition, he argues for relief on the basis of newly discovered evidence. Because Lui fails to establish any ground for relief, we deny his petition.

## FACTS

On February 9, 2001, detectives found the body of Elaina Boussiacos, Sione Lui's fiancée, in the trunk of her car in a parking lot. State v. Lui, 179 Wn.2d 457, 463-64, 315 P.3d 493, cert. denied, 134 S. Ct. 2842, 189 L. Ed. 2d 810 (2014). She had been strangled. Id. at 465. In 2007, detectives reviewing cold cases interviewed Lui again, ultimately charging him with murder in the second degree. Id. at 464. The late defense attorney Anthony Savage represented Lui at trial.

At trial, the State called as a witness a "dog track" expert, who testified that after smelling an article of Lui's clothing, bloodhounds followed a scent trail from the parking lot where Boussiacos's car was found back to Lui's house. Id. Deputy Denny Gulla, a detective who worked on Boussiacos's case, also testified about the dog track evidence. The State presented DNA (deoxyribonucleic acid) evidence, along with circumstantial evidence that Boussiacos wanted to end their volatile relationship and that Lui had motive and opportunity to kill her. Lui, 153 Wn. App. at 310-13. The State called witnesses who placed Boussiacos's car in the parking lot as early as Saturday, the day before she was reported missing and nearly a week before police discovered her body. The prosecutor also attacked Lui's credibility, noting, for example, that he gave friends several different accounts of his and Boussiacos's relationship and denied having sexual intercourse with Boussiacos despite DNA evidence suggesting the contrary. State v. Lui, 153 Wn. App. 304, 312-13, 221 P.3d 948 (2009), aff'd, 179 Wn.2d 457, 315 P.3d 493 (2014), cert. denied, 134 S. Ct. 2842, 189 L. Ed. 2d 810 (2014).

The defense theory was that Boussiacos left the home on Saturday morning and was killed by an unknown perpetrator. Counsel called Lui's friend Sam Taumoefolau, who testified that Boussiacos's car was not in the parking lot when he and Lui posted flyers in the area a few days after Boussiacos disappeared. Defense counsel cast doubt on the DNA and other forensic evidence. A jury convicted Lui as charged. Lui, 179 Wn.2d at 466.

Lui appealed to this court, which affirmed. Lui, 153 Wn. App. at 325. In 2014, our Supreme Court affirmed, transferring Lui's personal restraint petition to this court. Lui, 179 Wn.2d at 498. On June 23, 2014, the U.S. Supreme Court denied certiorari. Lui v. Washington, __ U.S.__, 134 S. Ct. 2842, 189 L. Ed. 2d 810 (2014).

## DISCUSSION

In order to obtain collateral relief by means of a personal restraint petition, Lui must demonstrate either an error of constitutional magnitude that gives rise to actual prejudice or a nonconstitutional error that "inherently results in a complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). If a petitioner makes a prima facie showing of actual prejudice, but the reviewing court cannot determine the merits of the claims solely on the record, the court should remand for a full hearing on the merits or for a reference hearing under RAP 16.11(a) and RAP 16.12. In re Pers. Restraint of Rice, 118 Wn.2d 876, 885, 828 P.2d 1086 (1992). But "[t]his does not mean that every set of allegations which is not meritless on its face entitles a petitioner to a reference hearing. Bald assertions and conclusory allegations will not support the holding of a hearing." Id. 886. A petitioner "must state with particularity facts which, if proven, would entitle him to relief" and must show that he has "competent, admissible evidence" to establish those facts. Id.

### I. Ineffective Assistance of Counsel

In his petition, Lui claims that trial counsel Savage's deficient performance violated his constitutional right to effective assistance of counsel. To prevail on a

3

claim of ineffective assistance, Lui must show both that (1) his attorney's representation fell below an objective standard of reasonableness, and (2) resulting prejudice, that is, a reasonable probability that the result of the trial would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The reviewing court "must make every effort to eliminate the distorting effects of hindsight and must strongly presume that counsel's conduct constituted sound trial strategy." Rice, 118 Wn.2d at 888-89. If one of the two prongs of the test is absent, we need not inquire further. Strickland, 466 U.S. at 697.

Lui makes several allegations of "general problems" with defense counsel. He alleges that Savage "was not always alert" and "dozed off several times." Lui contends that "Mr. Savage had a falling accident that caused him to deteriorate significantly, both mentally and physically." Lui argues that these problems led to errors during trial.

But, as Savage pointed out in a declaration, the trial judge was in an excellent position to observe counsel during this lengthy trial. Yet there is no indication in the record of any concern on the judge's part that Savage was falling asleep or not alert enough to be effective. And, contrary to Lui's contention, the court's decision to recess early one day during trial to allow Savage to seek treatment for a knee injury does not support a claim of ineffective assistance.

Next, Lui faults Savage for failing to challenge the State's theory of the case. He asserts that Savage failed to properly interview and then call to testify several witnesses to impeach the State's witnesses. Lui contends that

4

Woodinville Athletic Club employee Amber Mathwig could have testified that she did not see the victim's car in the parking lot until the Wednesday after Boussiacos disappeared, contrary to another witness's testimony that the car was in the lot as early as Saturday morning. He argues that Lui's friend, Paul Finau, and Lui's sister, Falepaini Harris, would have also testified that they did not see the car early in the week, and that they could have corroborated Sam Taumoefolau's testimony about posting missing person flyers in the area of the dog search. Lui argues further that the defense should have presented its own expert witness on dog tracking, as Lui's family wished, in order to impeach the State's expert.

Generally, the decision to call witnesses is a matter of trial tactics that will not support an ineffective assistance claim. State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981). As he states in his declaration, counsel made a strategic decision to follow his "general philosophy that it is preferable to explain circumstances rather than to directly confront them." In this case, rather than set up a direct confrontation by denying the possibility that the dog tracked Lui's path from Boussiacos's car to his home, counsel explained that the dog tracked the scent that Lui left in the area while posting flyers. The decision to avoid a "clash of experts" is consistent with reasonable trial strategy. In re Pers. Restraint of Khan, No. 89657-7, slip op. at 13 (Wash. Nov. 25, 2015). Moreover, Mathwig told Savage before testifying that she had seen the car in the lot on Monday and again on Wednesday. This information contradicted the defense investigator's notes which reported that she first saw the car on Wednesday. This was not

favorable to the defense. It was not objectively unreasonable for Savage to decide not to present witnesses whose testimony would be favorable to the State or whose testimony would, at best, attempt to prove a negative.

Lui alleges further that Savage was ineffective for failing to present evidence that Lui's arm injury "precluded him from committing the crime," for not introducing evidence that Boussiacos's ex-husband committed the crime, and for failing to "aggressively pursue[ ] impeachment information" about Deputy Gulla. He establishes none of these claims.

In his declaration, Savage noted Lui's size and athletic ability, as well as the possibility that Boussiacos was strangled with some kind of ligature. He stated that an argument that Lui would not have had the strength to strangle the much smaller Boussiacos "seemed tenuous, at best." Rather than help, he viewed it as another example of evidence that could hurt by diminishing the defense case.

Savage made a reasonable strategic decision that a proffer Boussiacos's of ex-husband Negron as another suspect "was not legally colorable under current case law," and, "even if admitted [that evidence] could have diminished the defense case." Savage noted that Negron had an alibi, DNA evidence on a shoelace could have come from either Negron or the son he had with Boussiacos, and no evidence suggested a motive for killing his son's mother.

Finally, Lui does not show either deficient performance or prejudice related to Savage's alleged failure to impeach Gulla's credibility. Before trial, the State moved to exclude evidence of disciplinary actions against Gulla. Lui

6

argues that "Gulla's tenuous status with [King County Sheriff's Office] goes directly to his motivation to trump up a case against Lui." He contends that Savage should have impeached Gulla for bias as well as previous dishonesty. But, as Savage knew, findings of Gulla's misconduct that were related to dishonesty were more than 20 years old, and Savage told the trial court, "I don't see any nexus between the alleged misconduct of Detective Gulla [in] other cases and this case." The record indicates, however, that Savage did not overlook or ignore Gulla's past misconduct. Savage expressly put the court and the prosecutor on notice that if the State attempted to portray Gulla as particularly experienced or expert, Savage would consider the door opened to Gulla's entire history. Lui counters that "[i]f that was indeed Savage's strategy then he failed miserably in pursuing it," given his own questions that elicited facts about Gulla's training and experience. But, Lui does not show how Savage's decisions fell below an objective standard of reasonableness or prejudiced him. Matters that go to trial strategy or tactics do not show deficient performance, and Lui bears the burden of establishing there were no legitimate strategic or tactical reasons behind his attorney's choices. State v. Rainey, 107 Wn. App. 129, 135-36, 28 P.3d 10 (2001). Lui's speculation and conjecture based on Gulla's alleged actions in other matters, without more, does not meet that burden or overcome the presumption that counsel's strategic decisions in his case were reasonable.

Lui also claims that Savage was ineffective for failing to object to several instances of alleged prosecutorial misconduct. He asserts that "the prosecutor argued, without evidence, that the defendant committed a sexual assault." He

7

argues that the State elicited opinion testimony from officers that Lui lied, and that he "showed his guilt by failing to act like an aggrieved fiancée [sic]." And, he alleges that the prosecutor violated Lui's constitutional rights by questioning Taumoefolau about the Mormon religious beliefs he and Lui shared.

The decision to object, or to refrain from objecting even if testimony is not admissible, is a tactical decision not to highlight the evidence to the jury. State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." Id. Lui maintained that he had not had sex with Boussiacos for weeks, a claim contradicted by evidence of Lui's DNA on Boussiacos's underwear and in the vaginal wash taken from Boussiacos's body. Lui, 179 Wn.2d at 466; Lui, 153 Wn. App. at 312. Refraining from lodging an objection that could have highlighted the inconsistencies between Lui's statements and the evidence was a reasonable tactical decision. While Savage did not object to the detectives' testimony about Lui's truthfulness and response to news of the victim's death, Savage impeached the detectives' conclusions and inconsistent statements during cross-examination.

As for Lui's claim of that his right to religious freedom was violated, he does not show how he suffered prejudice from Savage's failure to object to the State's questions to Taumoefolau. The Washington Constitution guarantees that no person shall "be questioned in any court of justice touching his religious beliefs to affect the weight of his testimony." WASH. CONST. art. I, § 11. Here, the State's questions highlighted an area of disagreement between Lui and

Boussiacos and were relevant to Lui's activities during the weekend Boussiacos disappeared. They did not touch on Taumoefolau's "religious beliefs to affect the weight of his testimony." Id. And, contrary to Lui's assertion, they were not analogous to the prosecutor's improper injection of racial stereotypes in State v. Monday, 171 Wn.2d 667, 257 P.3d 551 (2011).

Finally, Lui contends that counsel was ineffective for failing to request additional DNA testing. In his declaration, however, Savage describes a reasonable tactical decision:

> The DNA testing and results provided by the State indicated the presence of the defendant's semen in the victim's vagina and underwear. Partial profiles of the victim's husband and/or son were also detected on the victim's shoes. The presence of unidentified male profiles in any of these samples allowed me to argue that we don't know who else had been in contact with the victim (thus leaving behind his unidentified DNA profile) and, therefore, a reasonable doubt existed as to who killed her. Had I taken additional steps to have the unidentified DNA results further analyzed, there was a high probability that none of them would have matched each other, thereby weakening the argument that the unidentified male profiles belonged to the real killer. If the blood on the stick shift and the unidentified male profiles on the steering wheel, vaginal swabs, and the shoe laces did not match one another, then any argument that another person committed this crime would be severely weakened.

Lui does not establish any claim of ineffective assistance.

## II. Prosecutorial Misconduct

Next, Lui contends that prosecutorial misconduct violated his constitutional rights. He raises an argument under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that the prosecution violated his due process rights by failing to provide impeachment information about Gulla. And, he

9

maintains that the prosecutor's questions about Taumoefolau's religion violated Lui's constitutional rights.

In Brady, the United States Supreme Court held that due process requires the State to disclose evidence that is favorable to the defendant and material either to guilt or punishment. Id. at 87. This includes material impeachment evidence. State v. Knutson, 121 Wn.2d 766, 771-72, 854 P.2d 617 (1993). Evidence is material if there is a "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. at 772 (quoting Rice, 118 Wn.2d at 887). "'Wrapped up in this standard of materiality are issues of admissibility; if evidence is neither admissible nor likely to lead to admissible evidence[,] it is unlikely that disclosure of the evidence could affect the outcome of a proceeding.'" Id. at 773. Here, Lui does not show a reasonable probability that even admissible evidence about Gulla's alleged past misconduct would have changed the outcome of the trial. Because he does not show that the additional evidence was material, he does not establish grounds for relief under Brady.

Defense counsel did not object to the prosecutor's allegedly improper questions about religion. Therefore, Lui has waived this claim of error unless he can show that the prosecutor committed misconduct that was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 Wn.3d 653 (2012). Lui must show both (1) that "no curative instruction would have obviated any prejudicial effect on the jury" and (2) that the misconduct resulted in prejudice that "had a substantial

10

likelihood of affecting the jury verdict." State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). Because Lui shows neither, his claim fails.

## III. Juror Misconduct

Lui also alleges that juror misconduct violated his constitutional right to an impartial jury. He presents a declaration from investigator Denise Scaffidi, in which Scaffidi reported that she learned from juror Clare Comins that the jury considered extrinsic information based on one juror's purported personal knowledge of the area around the crime scene. According to Scaffidi, Comins stated that during deliberations, a female juror said that Lui and Taumoefolau could not have placed leaflets at the mall in Woodinville because that mall had not yet been built. Scaffidi alleges that Comins believed that "jurors discussed this information during deliberations and that it reflected poorly on Mr. Taumoefolau's testimony." However, Comins refused to sign a declaration to that effect. The trial court denied defense counsel's request for access to the other jurors' contact information. Lui argues that this court should remand for an evidentiary hearing for purposes of questioning all the jurors about Comins's statements.

A criminal defendant is constitutionally entitled to a fair trial before an unbiased and unprejudiced jury. State v. Jackson, 75 Wn. App. 537, 543, 879 P.2d 307 (1994). Jurors are expected to bring their opinions, insights, common sense, and everyday life experiences to their deliberations. State v. Briggs, 55 Wn. App. 44, 58, 776 P.2d 1347 (1989). A juror's introduction of specialized or expert knowledge, however, may be grounds for a new trial. Id. at 59.

Generally, however, in evaluating a claim of juror misconduct, a court may not consider matters that inhere in the verdict. State v. Jackman, 113 Wn.2d 772, 777, 783 P.2d 580 (1989). This includes the mental processes, both individual and collective, by which jurors reach their conclusions. Id. at 777-78. Even if Comins or other jurors were willing and available to submit declarations, their statements would likely be inadmissible as pertaining to matters inhering in the verdict. And, the alleged statements themselves are based on the juror's everyday life experiences, not the product of specialized knowledge or outside sources.

An evidentiary hearing is not warranted in a collateral challenge if the defendant fails to allege facts that establish prejudice. Rice, 118 Wn.2d at 889. Here, the alleged extrinsic evidence may impeach one portion of Taumoefolau's testimony. But, it does not tend to disprove the defense theory that Lui and Taumoefolau posted flyers near where the victim's body was found and that this explains why bloodhounds tracked Lui's scent in the area. Therefore, Lui does not show actual prejudice. He fails to establish grounds for relief.

IV.   Newly Discovered Evidence

In 2001, crime scene investigators found a blood stain on the stick shift "skirt" of Boussiacos's car. Two years after trial, in 2010, the Washington State Patrol Crime Laboratory matched the DNA from this blood sample to Sandro M. Enciso, who later changed his name to Alesandro Biagi. On November 4, 2013, police questioned Biagi.

Biagi had moved to Washington around 1992. He held a number of jobs in the Seattle area, mostly related to automobiles. He worked at dealerships and auto detailing shops, and also had a side business buying, detailing, and selling cars on his own. When detectives showed Biagi a picture of Boussiacos, he was "100 percent" certain he had seen her somewhere before, but could not say where. He denied murdering her. In a later conversation with a detective, he opined that he probably worked on her car. He stated that he did not recognize Lui.

In a supplement to his personal restraint petition, Lui contends that evidence of the DNA match is grounds for a new trial. He argues that the evidence "is certainly material because it points to a specific, alternate perpetrator" who "has no innocent explanation" for leaving his blood in Boussiacos's car.

Newly discovered evidence is grounds for relief in a personal restraint petition if those facts, "in the interest of justice," require vacation of the conviction or sentence. RAP 16.4(c)(3). To warrant this relief, this evidence would have been admissible at trial and would have probably changed the outcome. In re Pers. Restraint of Jeffries, 114 Wn.2d 485, 493, 789 P.2d 731 (1990). To prevail here, Lui must show that the evidence: "'(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.'" In re Pers. Restraint of Lord, 123 Wn.2d 296, 319-20, 868 P.2d 835 (1994) (quoting State v. Williams, 96 Wn.2d 215, 223, 634 P.2d

13

868 (1981)). The absence of any one of these five factors justifies the denial of a new trial. State v. Macon, 128 Wn.2d 784, 800, 911 P.2d 1004 (1996).

Washington courts have long followed the rule that in order to present evidence suggesting another suspect committed the charged offense, the defendant must show "such a train of facts or circumstances as tend clearly to point out some one besides the prisoner as the guilty party." State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932). In other words, "some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the charged crime." State v. Franklin, 180 Wn.2d 371, 381, 325 P.3d 159 (2014). "Mere evidence of motive in another party, or motive coupled with threats of such other person, is inadmissible, unless coupled with other evidence tending to connect such other person with the actual commission of the crime charged." State v. Kwan, 174 Wash. 528, 533, 25 P.2d 104 (1933). The evidence must show "some step taken by the third party that indicates an intention to act" on the motive or opportunity. State v. Rehak, 67 Wn. App. 157, 163, 834 P.2d 651 (1992). The defendant must lay a foundation establishing a clear nexus between the other person and the crime. State v. Condon, 72 Wn. App. 638, 647, 865 P.2d 521 (1993). The defendant bears the burden of showing that the other suspect evidence is admissible. State v. Pacheco, 107 Wn.2d 59, 67, 726 P.2d 981 (1986).

Lui does not carry this burden here. He establishes no nexus between Biagi and the crime—no motive, threat, or step taken that would indicate any intention on Biagi's part to act on any opportunity. Because Lui does not show

14

that this "other suspect" DNA evidence is admissible, he cannot show that it would have changed the outcome of his trial. For the same reason, he does not establish his claim that Savage was ineffective for not seeking additional DNA testing. Speculation and conjecture based upon a small amount of DNA deposited in the victim's car by a person who has held several Seattle-area jobs selling and detailing automobiles does not justify relief here.

We deny the petition.

WE CONCUR: