[No. 24449. Department Two. September 20, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE KWAN *et al., Appellants.*[1]

[1]Reported in 25 P. (2d) 104.

*Lloyd & McGavick* and *G. C. Nolte,* for appellants.

*Bertil E. Johnson, Hilton B. Gardner,* and *Fred C. Dorsey,* for respondent.

MAIN, J.—The defendants were charged by information with murder in the first degree. The trial resulted in a verdict of guilty as to each, with a recom-

mendation that the death penalty be not imposed. Each of the defendants was sentenced to a life term in the state penitentiary, from which judgments they appeal.

The appellants were charged with having shot one Lew Bow, in the city of Tacoma, at about four a. m., May 2, 1932. The appellants will be referred to as follows: George Kwan as Kwan, Hong Sing, alias Gilbert Hong, as Hong, Wong Choo as Choo, and Wallace Gilbert Lee as Lee. Bow died from the wounds which he received from the shooting, about three hours afterwards, leaving a wife and a child three years of age.

The facts leading up to the shooting may be summarized as follows: Kwan, Hong and Lee lived in the city of Seattle, and Choo resided in Tacoma at what is called the "Chinese Club." On the evening of May 1, 1932, Kwan and Lee came from Seattle to Tacoma, and at about eight o'clock p. m. registered there at the New Tacoma hotel. Soon after, they went to their room. In response to a telephone call from them, Choo visited them and stayed for a few minutes. The bed in the room during the night had not been occupied, and the following morning there was found in the room the holster for a revolver.

Bow conducted a restaurant in the city, and usually did not arrive at his home until about four a. m. During the evening of May first, Mrs. Bow, with her daughter, had been visiting with friends. At about twelve o'clock, she returned home in the automobile which she and her husband owned, put the same in the garage, and, as she was unlocking the door to the house, was seized by two masked men, who required her to enter the house and get on the bed in the bedroom. Then they asked her for money and keys. She had no money, but gave them her keys, and, while one

of them was searching the house, the other flicked a dagger in front of her. After a time, they bound her hands and feet with a cord, and she remained on the bed. The telephone wires leading into the house were cut on the inside.

Bow arrived home about four a. m., and, as he was entering the house, he called for help. Immediately afterwards, shots were fired. Mrs. Bow, by the aid of her small daughter, was able to get a pair of scissors and sever the cords about her feet. At the time the shots were fired, Kwan and Lee were in the house, Mrs. Bow having positively identified them and their clothing. When the shooting occurred, they immediately left the house. When Mrs. Bow went outside, she found her husband on the sidewalk, leaning against the steps leading to a neighbor's house which was close by. There was evidence that, after the shooting, four men were seen running from the scene of the murder and approaching an automobile, but it was too dark for the witnesses to identify them.

When Mrs. Bow reached her husband, he told her that he had been shot, and he gave the names "George Kwan, Gilbert Lee, Gilbert Hong and Wong Choo" all at once. Some few minutes later, a police officer arrived, and Bow told him that he had been shot by Chinese boys. The wounded man was taken to the hospital, and it was found that he had been shot five times, two of which, after entering the back, had passed entirely through his body.

When asked by the doctor who shot him, in the presence of the nurse, the superintendent of the hospital and one or two police officers, he replied: "I will tell you tomorrow." The doctor said: "You won't be here tomorrow. You will be dead in two hours. You can't live over two hours." He again said: "Well, I will tell you tomorrow." The doctor said: "You

won't be here tomorrow to tell," and he said, "I will tell my wife." The doctor again requested him to tell who shot him. He replied: "If I tell you, they will get me," and the doctor said: "They already got you." After this, in the presence of the doctor, the nurse, the superintendent of the hospital, and one or two police officers, he gave the names.

Not all of these witnesses got the four names, some getting two or three, but all the names are mentioned in the testimony of those who were present. The doctor said that he named George Kwan and Gilbert Hong. One of the officers testified that he named George Kwan, Lee and Hong. Sister Othelia, the superintendent of the hospital, who was present, said that he named George Kwan and Wong Choo. Another officer said that he named George Kwan, Gilbert Hong and Lee Yip, which was the Chinese name of Gilbert Lee.

After this, the officers went to the Chinese Club and inquired of Choo for Kwan and Lee, and were told that they were not there. A little later, they returned, found them there, and placed them under arrest. They were in the club at the time that Choo told the officers that they were not there. Kwan and Lee were taken to the hospital by the officers, taken into the room where Bow was, and remained there for two or three minutes where Bow could see them. Nothing was said during the time they were in the room, but after their retirement Bow was asked if those were the men who had shot him and he said they were. Later, Choo was arrested in Tacoma and Hong in Seattle. The defense of each of the appellants was not guilty and an alibi.

■ It is first contended by the appellants that they were denied the right, by competent testimony, direct and cross, to prove that another than appellants committed the murder. While evidence tending to show

that another party may have committed the crime may be admissible, before such testimony can be received there must be such proof of connection with it, such a train of facts or circumstances as tend clearly to point out someone besides the one charged as the guilty party. Remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose. *State v. Downs,* 168 Wash. 664, 13 P. (2d) 1. Mere evidence of motive in another party, or motive coupled with threats of such other person, is inadmissible, unless coupled with other evidence tending to connect such other person with the actual commission of the crime charged. *People v. Mendez,* 193 Cal. 39, 223 Pac. 65.

The appellants made an offer of proof covering both cross-examination and direct evidence, which was refused. The offer of proof did not meet the requirements of the rule stated, and was properly rejected.

It is next contended that the appellants were denied the right to offer evidence as to the character of the deceased. They were permitted to offer evidence as to his reputation for truth and veracity, and the testimony thus offered was met by testimony of the state on the same question. The reputation of the deceased for truth and veracity was as far as they were entitled to go. Underhill's Criminal Evidence, 3d ed., § 504; *State v. Cushing,* 17 Wash. 544, 50 Pac. 512; *State v. Schuman,* 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A, 633.

The appellants next contend that the trial court erred in the scope to which it permitted the cross-examination of Mrs. Bow to go. The cross-examination of a witness is largely a matter of discretion of the trial court, and its ruling will not be disturbed in the absence of abuse of that discretion. By the cross-examination of Mrs. Bow, it was sought to go into a

matter which was entirely immaterial and which had no bearing upon her credibility. There was no error in the ruling of the trial court with reference thereto.

It is next contended that there was misconduct on the part of the court in a certain particular. This same complaint is made with reference to other matters, and it appears repeatedly in the appellants' brief. We shall not go into details of the matter, but, after having read the record with care, it may be said that there is no substantial basis for the charge of misconduct on the part of the court.

It is next contended, under the heading of what is called "hearsay testimony," that the court erred in permitting Mrs. Bow to state the reason why she did not testify truthfully before the tong. On the evening of the day of the killing, there was a meeting in Seattle called by the tong, which is a Chinese society, to inquire into the murder of Bow. Mrs. Bow appeared at that hearing and was interrogated. The testimony that she gave there was not the same as she gave upon the trial. When asked her reason for not testifying truthfully before the tong, she said that it was because anyone that testified against the tong would be "put on the spot," which meant be killed. She had gotten this information from her husband. The inquiry did not end when Mrs. Bow admitted on cross-examination that she had made contradictory statements when testifying before the tong, and it was not error to permit her to give the reason therefor. *State v. Ripley*, 32 Wash. 182, 72 Pac. 1036; *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989.

It is next contended that the court erred in not permitting Mrs. Bow to answer the question: "Where have you been living lately, Mrs. Bow?" This question was asked on second re-cross-examination, and the witness had previously testified to the location of

the Bow residence and other similar questions. There was no error in this regard.

It is next contended that it was error to permit the police officer to testify, when he arrived, that Bow said that China boys had shot him, for the reason, as it is claimed, that this statement was not a part of the *res gestae*. The officer giving the testimony arrived at the scene of the homicide a few minutes after the shooting. Bow at this time was lying on the sidewalk, leaning against the steps leading up to a neighbor's residence.

The fact that the answer was given in response to a direct question does not destroy its spontaneity. Statements, though in answer to a question, are nevertheless spontaneous and instinctive where the surrounding facts and circumstances negative the thought that they might have been made with design or premeditation. *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12; *State v. Labbee,* 134 Wash. 55, 234 Pac. 1049. The evidence in this case shows that the statement was spontaneous and instinctive, and was not made with design or premeditation.

It is next contended that the court erred in limiting the cross-examination of one of the officers who testified relative to the dying declarations. The objection to the question was made on the ground that it was repetition. The same matter had already been covered by repeated questioning. There is no merit in the claim of error.

It is next contended that the dying declarations were not admissible because it is claimed that, at the time they were made, Bow was not under the sense of impending death. The facts leading up to this testimony have already been recited, and need not here be repeated. The doctor testified that it was his opinion that, at the time the dying declarations were made,

Bow believed that he was going to die át any time. Like testimony was given by one or two of the others present. The dying declarations were properly admitted, and there was no error in permitting the witnesses to state that they thought that Bow believed that he soon would die. *State v. Power,* 24 Wash. 34, 63 Pac. 1112, 63 L. R. A. 902; *State v. Bridgham,* 51 Wash. 18, 97 Pac. 1096; *State v. Quinn,* 56 Wash. 295, 105 Pac. 818.

It is next contended that the trial court erred in refusing to permit the appellants to prove that Mrs. Bow was not, in fact, in fear when before the tong, and that there was no duress or intimidation, and also to offer proof as to the purposes of the tong organization. To have pursued the inquiry as the appellants sought to do would have brought into the case a collateral matter which would have no bearing upon the controversy, and it was not error to reject the offered testimony.

It is next contended that the prosecuting attorney was guilty of misconduct. In this indictment, there are a number of specifications, but we shall only notice two of them.

George Kwan, on cross-examination, was asked by the prosecuting attorney: "Now, while I was assistant United States attorney in Tacoma, you were working with the narcotic division as what is commonly known as an informer, or stool pigeon?" Upon his direct examination, there had been brought out that the witness had held responsible positions, had been employed by the United States narcotic squad, and had a commission as deputy sheriff and as a highway patrolman. In support of this assignment of error, no authorities are cited, and the argument covers less than half a page in the brief. There was nothing improper

in the question, because it was responsive to matters inquired into upon the direct examination.

Again, on cross-examination, Kwan was asked whether he had been found guilty in the United States district court in Seattle of a violation of the narcotics act. The question was objected to, was withdrawn by the prosecuting attorney, and the court instructed the jury to disregard it. There can be no error here. So far as we know, the witness might have answered the question in the negative, and, if he had done so, there would have been no prejudicial error. The charges of misconduct on the part of the prosecuting attorney are without merit.

It is next contended that the court erred in certain instructions given the jury and in refusing to give requests. None of the instructions given, which are complained of, are set out in the appellants' brief, and, without going into the matter in detail, we may say that, after considering the instructions as given, we find them free from error.

One of the instructions requested and not given was upon the question of motive, and was properly rejected because it assumed that there was no evidence of motive. The instruction, as drawn, was not in accord with the holding in the case of *State v. Nordstrom,* 7 Wash. 506, 35 Pac. 382, and would have been a comment upon the facts. It was not error to refuse to give it. *People v. Glaze,* 139 Cal. 154, 72 Pac. 965; *People v. Wilkins,* 158 Cal. 530, 111 Pac. 612; *State v. McLennan,* 40 Idaho 286, 231 Pac. 718.

The other requested instruction set out in the appellants' brief was properly rejected, because, so far as it would have been proper to instruct with reference to matters covered in the request, they were covered in the instructions given.

■ With reference to whether the evidence offered by the state was sufficient to sustain a conviction, the question was distinctly one for the jury. The evidence as to Kwan and Lee was practically conclusive. As to Choo, he visited Kwan and Lee in the hotel, denied that they were in the Chinese Club when in fact they were there, and was named as one of the men by Bow to his wife, and also was named in the dying declaration. As to Hong, he was named specifically in the statement of Bow to his wife when she approached him immediately after the killing, and was named in the dying declaration.

It is true that all the appellants called witnesses who supported their defense of alibi, but that only presented a question for the jury. A dying declaration is direct evidence of the facts stated therein. Underhill's Criminal Evidence (3d ed.), § 171. There was ample evidence to sustain the verdict of the jury as to each of the appellants.

The appellants make many other contentions of minor importance. The discussion of each one of these contentions would unduly extend this opinion, already over-long. It is sufficient to say that they have all been considered, and in none of them do we find substantial merit.

The judgment as to each of the appellants will be affirmed.

BEALS, C. J., BLAKE, STEINERT, and TOLMAN, JJ., concur.