COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30694-1-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 30698-4-III) |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN JACOB ZUVELA SR. | ) | ORDER GRANTING MOTION |
| and JOSEPH SUMNER EPPERSON, | ) | FOR RECONSIDERATION |
| | ) | AND AMENDING OPINION |
| Appellants, | ) | |
| | ) | |
| and JOHN JACOB ZUVELA JR., | ) | |
| | ) | |
| Defendant. | ) | |

THE COURT has considered appellant Joseph Epperson's motion for reconsideration of our December 26, 2013 opinion.

IT IS ORDERED, the motion for reconsideration is granted and the opinion shall be amended as follows:

(1) The first and second paragraphs on pages 1-2 are amended to read:

SIDDOWAY, J. — Joseph Epperson and John Zuvela Sr. were both found guilty of the first degree burglary of the home of their putative friends, David and Mary Wilton. They challenge the trial court's exclusion of certain evidence from their trial and its instruction to the jury on the circumstances under which it would be its duty to return a verdict of guilty. Mr. Zuvela also challenged certain legal financial obligations (LFOs) imposed by the court, as does Mr. Epperson by a motion to join Mr. Zuvela's arguments on appeal, which we grant.

The State concedes error as to the LFOs, a concession we accept. We find no other error or abuse of discretion by the trial court, including as to matters raised by Mr. Zuvela in a pro se statement of additional grounds. We affirm both Mr. Epperson's and Mr. Zuvela's convictions and sentences but remand both cases to the trial court for the limited purpose of addressing the inadequate record supporting its findings and imposition of LFOs.

(2) In the "Analysis" section, the first two paragraphs on pages 6-7 are amended

to read:

The defendants identify four assignments of error in their briefs. The State concedes error in connection with two issues raised by both defendants: the trial court's imposition of costs of incarceration and findings of ability to pay, and its order that Mr. Epperson and Mr. Zuvela pay the costs within 180 days after release. The State concedes that the record does not support the LFOs ordered and asks that we "remand to allow the trial court to address those issues." Br. of Resp't at 2. Neither defendant replied nor objected to the State's request for a remand, so we accept the concession and will remand to the trial court for the limited purpose of addressing the inadequate record supporting its findings and imposition of LFOs.

As for the contested issues on appeal, Mr. Epperson challenges the trial court's denial of his request to introduce evidence of the robbery of the Wiltons. Mr. Epperson and Mr. Zuvela both challenge the trial court's to-convict jury instruction arguing that it violated his right to a jury trial by misleading the jury as to its power to nullify.

(3) Under the section titled "II. Challenge To the To-Convict Instruction" on page

12, the first paragraph and the first line of the second paragraph are amended to read:

Mr. Epperson and Mr. Zuvela both argue that the trial court erred in instructing the jury that it had "a duty to return a verdict of guilty" if it found that all the elements of first degree burglary were proved beyond a reasonable doubt. The instruction was based on Washington Pattern Jury Instruction—Criminal 4.21 (elements of the crime), found at 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:

CRIMINAL 4.21 (3d ed. 2008). They contend that the language of the pattern jury instruction misstates the law, "provid[ing] a level of coercion for the jury to return a guilty verdict, deceiv[ing] the jurors about their power to acquit in the face of sufficient evidence, and fail[ing] to make the correct legal standard manifestly apparent to the average juror." Br. of Appellant Zuvela at 26-27 (citation omitted).[3]

At the time Mr. Epperson and Mr. Zuvela filed their opening briefs, this very argument had already

(4) The last full paragraph on page 18 is amended to read:

We affirm the convictions and the sentences but remand both cases to the sentencing court for the limited purpose of addressing the inadequate record supporting its findings and imposition of LFOs.

DATED: February 27, 2014.

PANEL: Judges Korsmo, Siddoway, Fearing.

FOR THE COURT:

_____
KEVIN M. KORSMO, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30694-1-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 30698-4-III) |
| v. | ) | |
| | ) | |
| JOHN JACOB ZUVELA SR. | ) | |
| and JOSEPH SUMNER EPPERSON, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and JOHN JACOB ZUVELA JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant. | ) | |

SIDDOWAY, J. — Joseph Epperson and John Zuvela Sr. were both found guilty of the first degree burglary of the home of their putative friends, David and Mary Wilton. They challenge the trial court's exclusion of certain evidence from their trial, its instruction to the jury on the circumstances under which it would be its duty to return a verdict of guilty, and certain legal financial obligations (LFOs) imposed on Mr. Zuvela.

The State concedes error as to the LFOs, a concession we accept. We find no other error or abuse of discretion by the trial court, including as to matters raised by Mr. Zuvela in a pro se statement of additional grounds. We affirm the convictions and sentences in both cases but remand Mr. Zuvela's case to the trial court for the limited

purpose of addressing the inadequate record supporting its findings and imposition of LFOs.

## FACTS AND PROCEDURAL BACKGROUND

Late one evening in January 2011, Mary and David Wilton returned to their home to find a van that they recognized as belonging to John Zuvela Sr. parked in their driveway with its side door open. Mr. Zuvela's son was sitting in the van. Mr. Wilton would later testify that they considered Mr. Zuvela[1] a friend, and "[thought] nothing of it" when they first saw his van. Report of Proceedings (RP) at 344.

After pulling into the driveway, however, they saw that the front door to their home, which had been locked when they left several hours earlier, was open. Personal property that should have been inside the home had been brought out and was sitting on the front lawn. Realizing that something was wrong, Mr. Wilton pulled up sideways behind the van to partially block it and prevent it from leaving.

Concluding they were being robbed, Mr. Wilton told his wife to go across the street to a neighboring gas station and call the police, which she did. Meanwhile, Mr. Wilton approached the house, where Mr. Zuvela was standing in the doorway. An altercation ensued in which Mr. Zuvela shoved Mr. Wilton into the bushes, accused the Wiltons of owing him money, and headed toward the van. Mr. Wilton yelled denials and

---

[1] Our references to "Mr. Zuvela" are in each case to the appellant, John Zuvela Sr., not the son.

2

followed Mr. Zuvela to the van, where he saw other property belonging to him and his wife inside, which he began grabbing and pulling out.

After Mr. Wilton's initial exchange of words with Mr. Zuvela but before following Mr. Zuvela to the van, Mr. Wilton saw through a window that Joseph Epperson, whom he and his wife also knew, was inside taking apart the family computer. When Mr. Epperson emerged from the home in response to the argument between Mr. Wilton and Mr. Zuvela, Mr. Wilton demanded to know what Mr. Epperson was doing there. According to Mr. Wilton, Mr. Epperson said, "I don't know what I'm doing here." RP at 403.

A third intruder, Regina Rogers, who the Wiltons also knew and who had introduced them to Mr. Epperson, then emerged from the home holding a pillowcase and a tote bag, both of which were later discovered to be filled with Ms. Wilton's jewelry. Upon seeing Mr. Wilton, Ms. Rogers went back inside, dropped the pillowcase and bag, and then ran toward Mr. Zuvela's van. Seeing that it was blocked, she ran across the front lawn and down the street. Mr. Epperson left at that point as well, following Ms. Rogers.

In an effort to leave, Mr. Zuvela backed up, ramming his van into the front of the Wiltons' car. After ramming it several times and pushing it toward the street, Mr. Zuvela turned and was able to drive across the front lawn and into the street. A short distance away, he stopped and picked up Mr. Epperson and Ms. Rogers.

3

The interior of the home was found by the Wiltons to be in a shambles, with their computer dismantled, pieces stacked by the front door, and tools pulled off of shelves.

Mr. Epperson, Mr. Zuvela, and Mr. Zuvela's son were each charged with one count of residential burglary. The charges were later amended to first degree burglary.

Mr. Epperson's defense at trial was that he, Ms. Rogers, Mr. Zuvela, and Mr. Zuvela's son were driving past the Wiltons' home when they noticed the door to the home was ajar and things were scattered around the yard. According to Mr. Epperson, they stopped to see if the Wiltons were okay "because they're our friends." RP at 430. Upon entering the home, they saw that it was a mess. Mr. Epperson testified that he and Mr. Zuvela were still in the home attempting to determine that the Wiltons were all right and that no one else was present when the Wiltons returned home. According to Mr. Epperson, Mr. Wilton immediately started screaming and accusing them of robbing him. Mr. Epperson testified that he tried to explain what they were doing there, but Mr. Wilton refused to listen. Mr. Epperson admitted during questioning by his lawyer that he had been convicted of burglary in 2006, and the reason he left the scene of this alleged burglary after being accused by Mr. Wilton was that he did not want to be in that kind of trouble again. Mr. Epperson denied that he or the others took any property from the home.

As further support for his defense, Mr. Epperson sought several times to present evidence that the Wiltons were involved in criminal activities that made their home an

4

attractive target for whoever allegedly ransacked the home before Mr. Epperson and his companions drove by. He first asked to be allowed to impeach Mr. Wilton's credibility with Mr. Wilton's prior plea of guilty to a felony charge of possession of methamphetamine. The controlled substance violation was not a crime involving dishonesty or false statement, and the court pointed out that it was admissible under ER 609(a)(1) only if the court determined that its probative value outweighed the prejudice to the party against whom it was being offered. The court concluded that the defendants had not demonstrated a probative value that outweighed the prejudicial effect of the evidence.

On the third day of trial, the defendants notified the court that they had just learned that the Wiltons had been victims of a recent robbery. The court gave them leave to interview the Wiltons informally about the incident to determine whether it had any possible relevance.

Mr. Epperson thereafter sought to offer evidence of the crime, which the defendants had learned was an armed robbery that occurred after the perpetrator—a person known to the Wiltons and who had been invited into their home—pulled a gun on them. The perpetrator was believed to have later returned and fired shots through the Wiltons' window. Mr. Epperson's lawyer expressed his belief that "the Wiltons are engaged in criminal activity, that they're engaged in both the sale as well as the use of drugs. They have a number of items of stolen property in their residence, [and] they've

5

received stolen property in exchange for drugs that they've sold to other people." RP at 204. While recognizing that he would not "be able to get into" his beliefs about the Wiltons' criminal activity, he argued that he should be able to offer evidence that for whatever reason, criminals viewed the Wilton home as a target, arguing, "[T]his is something that happens at the Wiltons['] residence, that they are subject to those kinds of burglaries, home invasion robberies, that kind of thing." RP at 191.

The trial court again refused to admit the evidence, concluding that a burglary a year after the fact, with no earmarks of having been committed by the same person who committed the earlier burglary, was not relevant and that its prejudicial impact would "far outweigh" its probative value. RP at 206.

The jury found both defendants guilty of first degree burglary. Both appeal.

ANALYSIS

The defendants identify four assignments of error in their briefs. The State concedes error in connection with two issues raised by Mr. Zuvela: the trial court's imposition of costs of incarceration and finding of ability to pay, and its order that Mr. Zuvela pay the costs within 180 days after release. The State concedes that the record does not support the LFOs ordered and asks that we "remand to allow the trial court to address those issues." Br. of Resp't at 2. Mr. Zuvela did not reply and object to the State's request for a remand, so we accept the concession and will remand to the trial

6

court for the limited purpose of addressing the inadequate record supporting its findings and imposition of LFOs.

As for the contested issues on appeal, Mr. Epperson challenges the trial court's denial of his request to introduce evidence of the robbery of the Wiltons. Mr. Zuvela challenges the trial court's to-convict jury instruction (a challenge joined in by Mr. Epperson) arguing that it violated his right to a jury trial by misleading the jury as to its power to nullify.

In a pro se statement of additional grounds, Mr. Zuvela raises several additional grounds for requesting relief.

We address the issues in turn.

## I. Refusal to Admit Evidence of Subsequent Robbery

Mr. Epperson contends that he was denied his constitutional right to present a defense when the trial court refused to allow him to introduce evidence regarding the armed robbery of the Wiltons that took place shortly before the commencement of trial. He argues that the evidence "made more probable the fact that the victims' house had already been burglarized when appellant arrived." Br. of Appellant Epperson at 1.

State rule makers have broad latitude under the United States Constitution to establish rules excluding evidence from criminal trials, but "[t]his latitude . . . has limits. 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the

7

Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984))).

Evidentiary rules can impermissibly abridge a criminal defendant's right to present a defense, but only if they are "'arbitrary or disproportionate' and 'infringe[ ] upon a weighty interest of the accused.'" *State v. Rafay*, 168 Wn. App. 734, 796, 285 P.3d 83 (2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170 (2013). "The Supreme Court has generally found such an abridgment only when the evidentiary ruling effectively prohibited the substantive testimony of the defendant on matters relevant to the defense or the testimony of a percipient witness." *Id.* (citing examples). The constitutional concern, then, is with evidence that is *relevant* but excluded by rules that serve no legitimate purpose or that are disproportionate to the ends they are asserted to promote; a criminal defendant has no constitutional right to have *irrelevant* evidence admitted in his or her defense. *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Article I, section 22 of the Washington Constitution guarantees criminal defendants a right to

8

present testimony in their defense that is equivalent to the right guaranteed by the United States Constitution. *See State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983).

The question, then, is whether the evidence Mr. Epperson sought to offer was both relevant and excluded for a reason that was arbitrary or disproportionate and infringed upon an interest on his part that was weighty.

In *Holmes*, the United States Supreme Court characterized evidence rules that regulate when criminal defendants can offer evidence suggesting that someone else committed the crime with which they are charged as a "specific application" of a principle, previously recognized by the Court, that "the Constitution permits judges 'to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues.""" 547 U.S. at 326-27 (alterations in original) (quoting *Crane*, 476 U.S. at 689-90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986))). Washington regulates the admission of "other suspects" evidence according to such a standard, which is a specific application of ER 403.[2] A Washington criminal defendant may present evidence that another person committed the crime "when he can establish 'a train of facts or circumstances as tend clearly to point out some one besides the prisoner as the guilty

---

[2] ER 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

party.'" *State v. Hilton*, 164 Wn. App. 81, 99, 261 P.3d 683 (2011) (internal quotation marks omitted) (quoting *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932)), *review denied*, 173 Wn.2d 1037, *cert. denied*, 133 S. Ct. 349 (2012). Before "other suspects" evidence can be offered, there must be a "sufficient nexus between the third party and the crime." *State v. Condon*, 72 Wn. App. 638, 647, 865 P.2d 521 (1993). "'[T]here must be such proof of connection . . . or circumstances as tend clearly to point out someone besides the one charged as the guilty party.'" *State v. Russell*, 125 Wn.2d 24, 75, 882 P.2d 747 (1994) (second alteration in original) (quoting *State v. Kwan*, 174 Wash. 528, 532-33, 25 P.2d 104 (1933)). The trial court's decision on admissibility of this type of evidence is reviewed for abuse of discretion. *Id.*

The United States Supreme Court's decision in *Holmes* recognized the Washington standard for admitting "other suspects" evidence as satisfying the requirement of the Sixth and Fourteenth Amendments that a criminal defendant have a meaningful opportunity to present a defense. *Hilton*, 164 Wn. App. at 99 n.13 (citing *Holmes*, 547 U.S. at 327 n.* (citing *State v. Thomas*, 150 Wn.2d 821, 856-58, 83 P.3d 970 (2004))). The Washington standard for offering evidence of other suspects therefore passes constitutional muster; the only question is whether Mr. Epperson's evidence met the Washington standard. "As the proponent of the evidence, the defendant bears the burden of establishing relevance and materiality." *Id.* at 99.

10

The perpetrator of the armed robbery of the Wiltons was an identified individual: he was known to Mr. Wilton and robbed him face-to-face. Mr. Epperson offered literally no evidence tying that individual to the burglary with which he and Mr. Zuvela were charged. Nor did Mr. Epperson really profess to be *trying to*; the gist of his arguments in the trial court was not that the individual who committed the armed robbery a year later committed the earlier burglary, but instead that the subsequent crime was evidence that the Wilton home was an attractive target for a burglar or robber.

Given that asserted significance of the evidence, it was not even relevant. If the home was an attractive target for burglary or robbery, then it was as attractive a burglary target for Mr. Epperson and Mr. Zuvela as it was for someone else. The proffered evidence did not have any tendency to make it more probable that the burglary with which the defendants were charged was committed by someone other than them.

In any event, the trial court did not abuse its discretion in concluding that the evidence did not meet Washington's standard for admitting "other suspects" evidence. There was no evidence connecting the later perpetrator to the burglary charged in this case. Evidence of motive in another party is inadmissible unless coupled with other evidence tending to connect the other person with the actual commission of the crime charged. *Kwan*, 174 Wash. at 533.

11

## II. Challenge To the To-Convict Instruction

Mr. Zuvela, joined by Mr. Epperson's brief in reply, argues that the trial court erred in instructing the jury that it had "a duty to return a verdict of guilty" if it found that all the elements of first degree burglary were proved beyond a reasonable doubt. The instruction was based on Washington Pattern Jury Instruction—Criminal 4.21 (elements of the crime), found at 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.21 (3d ed. 2008). Mr. Zuvela contends that the language of the pattern jury instruction misstates the law, "provid[ing] a level of coercion for the jury to return a guilty verdict, deceiv[ing] the jurors about their power to acquit in the face of sufficient evidence, and fail[ing] to make the correct legal standard manifestly apparent to the average juror." Br. of Appellant Zuvela at 26-27 (citation omitted).[3]

At the time Mr. Zuvela filed his opening brief, this very argument had already been rejected by Division One of this court in *State v. Meggyesy*, 90 Wn. App. 693, 696, 958 P.2d 319 (1998), *abrogated on other grounds by State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005), *rev'd*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) and by Division Two in *State v. Bonisisio*, 92 Wn. App. 783, 794, 964 P.2d 1222 (1998) and *State v. Brown*, 130 Wn. App. 767, 770-71, 124 P.3d 663 (2005). Mr. Zuvela conceded

---

[3] Neither defendant objected to the giving of the instruction at the time of trial and the State objects to the issue being raised for the first time on appeal. Given our conclusion that a recent decision of this court is controlling, we exercise our discretion to address the issue on the merits rather than analyze the application of RAP 2.5(a).

as much, citing both cases in his briefing but arguing that the decisions had been poorly analyzed and that we should decide the issue differently.

This court thereafter filed its decision in *State v. Wilson*, 176 Wn. App. 147, 307 P.3d 823, *petition for review filed*, No. 89363-2 (Wash. Oct. 7, 2013), finding no error in the giving of the Washington pattern jury instruction challenged by Mr. Zuvela and Mr. Epperson. Rejecting the same arguments being advanced in this appeal, the decision in *Wilson* states:

> [W]e agree with the reasoning in [*Brown* and *Meggyesy*] and hold that "such an instruction is equivalent to notifying the jury of its power to acquit against the evidence and that a defendant is not entitled to a jury nullification instruction." *State v. Bonisisio*, 92 Wn. App. 783, 794, 964 P.2d 1222 (1998) (citing *Meggyesy*, 90 Wn. App. at 700). We hold that Mr. Wilson's constitutional right to a jury trial was not violated by the "to convict" jury instruction.

*Id.* at 151. *Wilson* is dispositive; the instruction did not misstate the law.[4]

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Zuvela raises two: (1)

---

[4] Mr. Epperson's reply joining in this assignment of error relies in part on this court's recent decision in *State v. Smith*, 174 Wn. App. 359, 298 P.3d 785, *review denied*, 178 Wn.2d 1008 (2013). According to Mr. Epperson, *Smith*—by recognizing that the term "duty" effectively mandates a particular result—supports his claim that the to-convict instruction in this case is invalid. But *Smith* did not focus on the term "duty," it focused on the distinction between use of the phrase "must acquit" versus "should acquit" as bearing on a jury's obligation to acquit in the face of reasonable doubt. The reasoning of *Smith* has no application to Mr. Epperson's argument that a jury should receive implicit instruction on its power of nullification.

13

alleged juror bias on the part of two prospective jurors and (2) two alleged instances of

prosecutorial misconduct.

*Juror Bias.* As to juror bias, Mr. Zuvela submits,

> A matter of record, I believe it was juror #4 knew the co-defendant Joseph Epperson and the Judge still allowed him to stay on the jury, "I wanted him off the jury."

SAG at 1, and,

> Also juror #6 was a frequent goer to the plaintiffs the Wiltons['] house for drugs.

*Id.*

The Sixth and Fourteenth Amendments to the United States Constitution, as well

as article I, section 22 of the Washington Constitution, guarantee a criminal defendant the

right to trial by an impartial jury. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43

(2012) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S. Ct. 692, 42 L. Ed. 2d 690

(1975)), *cert. denied*, 134 S. Ct. 62 (2013). A juror must be excused for either actual or

implied bias. RCW 4.44.170; *Kuhn v. Schnall*, 155 Wn. App. 560, 228 P.3d 828 (2010).

Implied bias is presumed from factual circumstances. *State v. Noltie*, 116 Wn.2d

831, 838, 809 P.2d 190 (1991); RCW 4.44.180 (implied bias defined). Actual bias is "the

existence of a state of mind on the part of the juror in reference to the action, or to either

party, which satisfies the court that the challenged person cannot try the issue impartially

and without prejudice to the substantial rights of the party challenging." RCW

14

4.44.170(2). The critical inquiry in determining whether actual bias exists is whether a juror with preconceived ideas can set them aside and decide the case on an impartial basis. *State v. Wilson*, 141 Wn. App. 597, 606-08, 171 P.3d 501 (2007). A trial court's ruling on a challenge for cause is reviewed for manifest abuse of discretion. *Davis*, 175 Wn.2d at 312.

Mr. Zuvela first claims that juror 6 frequently purchased drugs from the Wiltons. There is no mention in the record of juror 6 from the venire. Voir dire was not transcribed. As far as we know, juror 6 was excused for cause or through the exercise of some party's peremptory challenge. If juror 6 served as a juror because Mr. Zuvela *did not* make a challenge for cause or exercise a peremptory challenge, then Mr. Zuvela accepted him or her and cannot later challenge his or her inclusion. *State v. Reid*, 40 Wn. App. 319, 322, 698 P.2d 588 (1985). Mr. Zuvela's complaint about the juror fails to satisfy RAP 10.10(c)'s requirement to inform the court of the nature and occurrence of any alleged error.

Mr. Zuvela next complains that juror 4 knew Mr. Epperson and that Mr. Zuvela wanted him off the jury. The fact that Mr. Epperson knew juror 4 was raised before the jury was selected. Juror 4 was questioned at some length by the trial court. His answers revealed that he had played softball with Mr. Epperson over 20 years prior, had only infrequently run into him thereafter, and that he would not be influenced in his service as

15

a juror by that remote relationship. The lawyers were invited to ask follow-up questions; Mr. Zuvela's lawyer had none.

After excusing the juror, the trial court invited any challenges. Each of the lawyers stated on the record that there was no objection to leaving juror 4 on the panel. Here, then, the record explicitly establishes that Mr. Zuvela accepted juror 4, whose inclusion he cannot now challenge.

*Prosecutorial Misconduct.* Mr. Zuvela also raises two issues of prosecutorial misconduct or other error, asserting in his SAG,

> The prosecutor promised not to put Mrs. Wilton on the witness stand if we the defendants would allow him to do a video deposition, so we agreed. He put her on the stand anyway, now she knew the questions that were going to be asked.

SAG at 1, and,

> Co-defendant John Jacob Zuvela Jr. [Mr. Zuvela's son] was released mid trial, no explanation to the jury. I did not get a fair trial.

*Id.*

We first address Mr. Zuvela's challenge to the trial court's "release" of his son. At the close of the State's evidence, the son moved for a directed verdict. Before his lawyer could complete his argument, the prosecutor interrupted to say that he agreed the evidence against the son was insufficient. The court commented that it agreed, too, and "that's wonderful that we're all on the same page." RP at 419. The court then dismissed

16

the charge against the son with prejudice. There was nothing unusual, improper, or unfair about the dismissal.

Mr. Zuvela finally complains that the State was allowed to take Ms. Wilton's video deposition before trial based on her anticipated unavailability but then, when she turned out to be available, called her to testify live. All of the defendants complained. They informed the trial court that when the motion for the videotaped deposition was argued (to a different judge) they had expressed their concern that if a videotaped deposition was taken and Ms. Wilton was later called to testify live, both she and the State would have the benefit of a dress rehearsal of cross-examination.

The defendants admitted that the order authorizing the deposition did not rule out live testimony if Ms. Wilton became available and none of the defendants was able to provide the trial court with legal authority for refusing to allow the State to call her as a live witness under the circumstances.

Mr. Zuvela's lawyer made the following argument about Mr. Zuvela's position:

> [MR. ZUVELA'S LAWYER:] My client insists—I have not had an opportunity to listen to the recording of the motion. My client insists that the court granted the deposition on the basis that they would use the deposition and she would not be called as a witness. I have to be honest with you, I have no recollection exactly of what the judge said.
> THE COURT: That would be out there for Judge McCarthy.
> [MR. ZUVELA'S LAWYER]: The other defense counsel said he left it to the trial judge. It would be up to the trial judge. I don't have any memory that would contradict that. My client is firm in his recollection that there was a ruling. I know there is no indication in the written order that says that.

Nos. 30694-1-III; 30698-4-III
*State v. Epperson & Zuvela*

RP at 211.

The court ruled:

> I will be allowing Ms. Wilton to testify. . . . [T]here is certainly
> nothing this court is aware of that would limit that. At the point that the
> deposition was requested by the state, there appears to have been some true
> medical concerns going on that could have impacted her actual ability to
> testify in this trial. Therefore, the state pursued the deposition on that basis.
> As it turned out, her prognosis has turned out better than was perhaps
> anticipated when the deposition was taken that would allow her to testify.
>
> As to whether that gives her a leg up, you know, I think that is
> speculation. I certainly know there is now a deposition that has resulted in
> a transcript that if she testifies to anything differently will be used for
> impeachment evidence. Obviously that would be appropriate
> impeachment.
>
> Certainly the jury can be made aware that there was a prior
> interview, however we're going to be terming it. They will have to draw
> whatever conclusions they will from that information as to, again, whether
> she's had two bites at the apple and this has been much better testimony or
> not.

RP at 214. Mr. Zuvela has not demonstrated any legal error by the trial court. Its

decision was a reasonable exercise of its discretion.

We affirm the convictions and the sentences but remand Mr. Zuvela's case to the

sentencing court for the limited purpose of addressing the inadequate record supporting

its findings and imposition of LFOs.

A majority of the panel has determined that this opinion will not be printed in the

18

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Fearing, J.