
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34901-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRUDENCIO JUAN FRAGOS-RAMIREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Prudencio Juan Fragos-Ramirez (Juan Fragos)[1] appeals from convictions for two counts of aggravated first degree murder of Maria Cruz and her son, L.L.C. The trial court did not abuse its discretion in excluding third party perpetrator evidence. We affirm.

FACTS

The bodies of Ms. Cruz, 18, and her three-year-old son were discovered in her burned car about 5:54 p.m. on July 2, 2015, roughly 18-20 minutes after smoke was first reported. The two victims had last been seen in the company of Mr. Fragos about 5:10-5:15 p.m. that day. Fragos's home was about one-half mile from the location where the car and bodies were discovered.

---

[1] Appellant's counsel advised us that his client uses the name Juan Fragos, but that the name in the case caption is his correct name. Br. of Appellant at 1 n.1.

There was conflicting evidence whether Fragos and Cruz were in a dating relationship or not. It did appear that Cruz had been selling large quantities of cocaine and methamphetamine for Fragos during the final few months of her brief life. In the days leading up to her death, she had become concerned about having lost some of the drugs she was supposed to have been selling.

The relevant events of July 2 began with Fragos texting Cruz 160 times, starting around 3:00 a.m., despite Cruz telling him that she was going to sleep. That afternoon, he texted her to meet him at his house in an Othello area orchard and directed her to use a dirt road; she was not to tell anyone where she was due to security reasons. Cruz attempted to call Fernando Lopez Aguirre, the father of L.L.C., at 4:57 p.m. from Fragos's home. Mr. Lopez, who was drinking beer with his roommate and his boss, did not answer the phone call.

Ms. Cruz's body was discovered kneeling in the front passenger seat of her car, while L.L.C. was in the backseat. Both had died from multiple gunshot wounds inflicted by Perfecta 9 mm Luger ammunition. A clean box of that type of ammunition later would be recovered from a dusty shed on Fragos's property. A 9 mm handgun was recovered from the orchard where the car was discovered. The gun appeared to match one Fragos was seen holding in a photograph.

Fragos was observed returning to his home around 7:00 p.m. It was after midnight before police visited with him. By that time he had deleted all of the July 2 text messages

2

between his phone and Ms. Cruz's phone. He denied having seen Cruz that day. He also denied owning a gun.

After the discovery of the gun, police again questioned Fragos. He told them that he once owned a gun, but had sold it to Cruz and used the proceeds to buy food for a barbecue.[2] When told that the police had recovered the murder weapon, Fragos told the detectives that his prints would be found on the gun and that they had enough evidence to convict him.

Two counts of aggravated first degree murder eventually were filed. Prior to trial, the parties filed competing motions concerning "other suspects" evidence. The State sought to exclude evidence that Lopez had motive to commit the crimes, while the defense sought to introduce evidence that Lopez had mistreated Cruz and was angry at her. The court excluded the evidence, finding both that the defense had no admissible evidence and did not satisfy the foundation for admitting other suspect evidence.

The case proceeded to jury trial. Lopez was in Mexico during the trial and was not called on to provide testimony. The defense argued the case on a theory that the investigation had focused on Mr. Fragos early on and did not consider other possibilities, including the circle of people in Ms. Cruz's life. Nonetheless, the jury rejected his

---

[2] Shopping receipts contradicted this statement; his brother later would contradict other portions of the defendant's story.

argument and convicted him as charged. The trial court imposed the mandatory sentence of life in prison without possibility of parole.

Mr. Fragos then timely appealed to this court. A panel considered his appeal without hearing oral argument.

ANALYSIS

This appeal presents a single issue. Mr. Fragos contends that the trial court erred by excluding his other suspects evidence, thereby preventing him from presenting a defense to the charges. The trial court did not abuse its discretion.

Well-settled case authority governs our review. Trial court judges have great discretion with respect to the admission of evidence and will be overturned only for manifest abuse of that discretion. *State v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Under both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a defendant is entitled to present evidence in support of his defense. *State v. Strizheus*, 163 Wn. App. 820, 829-830, 262 P.3d 100 (2011). That right, however, does not include a right to present irrelevant or inadmissible evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). As the proponent of the evidence, the defendant bears

the burden of establishing relevance and materiality. *State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986).

The defense is allowed to present evidence that another person committed the crime when it can establish "a train of facts or circumstances as tend clearly to point out some one besides the prisoner as the guilty party." *State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932); *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). In establishing a foundation for admission of other suspects evidence, the defendant must show a clear nexus between the other person and the crime. *State v. Rafay*, 168 Wn. App. 734, 800, 285 P.3d 83 (2012), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170 (2013). The proposed evidence must also show that the third party took a step indicating an intention to act on the motive or opportunity. *Id.* However, evidence that merely establishes a motive to commit the crime is insufficient to establish the connection. *State v. Kwan*, 174 Wash. 528, 533, 25 P.2d 104 (1933); *State v. Condon*, 72 Wn. App. 638, 647, 865 P.2d 521 (1993).

Here, the trial court rejected the other suspects evidence because it failed to connect Lopez to the killing, while noting that much of the proffered evidence also was inadmissible hearsay or excludable by ER 404(b). Since the evidence failed to meet foundational requirements, we need not discuss the other evidentiary concerns noted by the trial judge.

Although Mr. Fragos argues his case is similar to the decision in *State v. Ortuno-Perez*, 196 Wn. App. 771, 385 P.3d 218 (2016), it is not. There the other suspects were admittedly at the scene of the shooting, were armed, and had opportunity to fire the fatal shot. *Id*. at 776-777. Here, no evidence was ever presented linking Lopez to the crime scene. Instead, the facts of this case are very similar to *State v. Wade*, 186 Wn. App. 749, 346 P.3d 838 (2015).

There, as here, the defendant was convicted of murder in the death of a woman and criticized the police investigation as flawed for failure to investigate other suspects—primarily the victim's ex-boyfriend. *Id*. at 763. The former boyfriend had previously assaulted the victim several years earlier, was subject to a no-contact order, and left voicemail "implied threats" three months before the killing. *Id*. at 765. Extensive testing did not turn up any of the former boyfriend's DNA or fingerprints at the crime scene—the victim's apartment. He also did not appear on the security camera recordings for the apartment building. *Id*. at 765-766.

On those facts, Division One of this court agreed with the trial court that the other suspects evidence was not admissible, noting that the trial court "properly focused solely on the connection of the proffered other suspect evidence to the crime." *Id*. at 766. The fact that the ex-boyfriend was a "bad actor" with a violent history and "a motive to harm her" was not enough. *Id*. at 766-767. The court noted that there was "no physical evidence connecting" the boyfriend to the murder and "no evidence" that he "was

anywhere near" the "apartment when the crime occurred." *Id*. at 767.  Accordingly, there was no evidence leading to a "nonspeculative" link between the crime and the ex-boyfriend. *Id*.

This case is in the same factual situation.  Mr. Fragos failed to present any evidence that put Lopez at the scene, or even in the general vicinity.  The fact that Lopez may have mistreated Ms. Cruz previously and allegedly may have had a motive to harm her was irrelevant in light of any evidence establishing that he had the opportunity to commit the murders during the 5:00 hour on July 2, 2015.  Absent that connection, there was no foundation for admitting the other suspects evidence.

The trial court correctly excluded the evidence due to the insufficient foundation.  There was no error.  The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____         _____
Fearing, J.                                                  Pennell, A.C.J.

7